J. Irwin Shapiro, J.
Motion by the petitioner for an order confirming an arbitration award in his favor. Cross motion by respondent to vacate said award or, alternatively, to modify and correct the same.
After buying a large plot of land respondent entered into negotiations with petitioner which culminated in a contract between the parties dated September 27, 1956. The contract required the petitioner to construct, from unused woodland, a complete road-racing plant, consisting of a three-mile circuit, administration building, spectator parking area, access roads, toll booths and other necessary racing and spectator facilities, for the sum of $254,200. The original contract was modified and in part superseded by later contracts between the parties, dated March 27,1957, and June 6, 1957.
Petitioner performed a substantial part of the work required by these contracts, but in and about September, 1957 a number of disputes developed between the parties in which petitioner claimed that he had not been paid for some of the work he did under the contracts, or for any of a large quantity of extra work he claimed to have done, and in which respondent claimed that petitioner had not performed his contracts and in which it denied that he had been asked to do or had done any extra work.
The contracts between the parties provided for the arbitration of disputes arising under the contracts by the American Arbitration Association. Accordingly, on February 10, 1958, respondent, by a notice in writing, alleged that it had been damaged in the sum of $178,107.49, by the petitioner’s actions and demanded arbitration of its claim.
Petitioner submitted an ‘‘ answer and counterclaim ’ ’ alleging that he had been damaged in the sum of $149,898.57, by reason of respondent’s actions.
As required by the contracts and under the rules of the American Arbitration Association, three arbitrators were selected and agreed upon by the parties, and hearings were held before them on 15 separate days commencing on April 15, 1958, and terminating on November 15, 1958. A unanimous award resulted in favor of petitioner. Its exact terms are not germane to this decision, except as to item 5 thereof, the effect and meaning of which will be hereafter discussed.
The respondent, by its cross motion, now seeks to vacate or, in the alternative, to modify and correct the award upon various grounds. We shall discuss its contentions seriatim.
The first point upon which respondent asks this court to vacate the award of the arbitrators is that they were guilty *925 of misconduct and misbehavior in refusing to make an inspection of the premises where the construction work was done, which led to all the disputes involved in the arbitration proceeding. Respondent’s moving affidavit contends that such refusal on the part of the arbitrators was objected to by it. Its counsel says: “ Prior to the commencement of the arbitration hearings I discussed with the attorneys for petitioner the desirability of arranging that the arbitrators travel to respondent’s property near Bridgehampton, Long Island where the contract work had been done. We agreed that it would be impossible, or next to impossible, for the arbitrators to understand the testimony and adjudicate the disputes fairly unless they made an inspection of the property early in the proceedings. Accordingly at each of the first hearings both Mr. Boyers and I requested that an inspection be held and commenced discussions as to how it could best be done; in fact we offered to supply Carey limousines to take the entire party out and back, which we thought would occupy the better part of a day. When each such request was made, the arbitrators agreed that it would be desirable to do this as requested by both parties. However, they were unwilling to fix any specific time. During one of the hearings when the subject was again renewed, the arbitrators indicated that they had made up their minds that inspection of the property by them was not necessary and that they would not agree to travel to Bridgehampton to make such an inspection. At that time counsel on both sides of the table objected and earnestly requested the arbitrators to reconsider but the arbitrators announced that their decision not to make an inspection was final.”
The petitioner’s attorney, however, says that the respondent’s version of the demand upon the arbitrators to inspect the work and their refusal is incorrect. He says ‘ that the arbitrators stated at the beginning of the proceeding that if they saw fit and if they felt it necessary, that they would visit the property in question. It was their opinion, however, after submission into evidence of all photographs, aerial photographs, overlays, cross-sections, earthwork tabulation sheets, transparencies, etc. of the property in question, they could arrive at their determination without making a personal trip to the site. This was the unanimous opinion of all three of the arbitrators and they so advised the attorneys representing both the petitioner and the respondent. No one voiced any objection when the arbitrators announced their decision not to visit the property in question because they had sufficient photographs and documents *926 to apprise them, of the information needed to decide all the issues involved.”
While it is true that the matters before the arbitrators for decision turned upon the nature and quality of the work done by petitioner in performance of his contracts with respondent, and that the work required by the contracts was extensive and was perhaps somewhat unusual in that it involved the conversion of woodland into an entire plant designed to serve the needs of both automobile racing competitors and large crowds of spectators, the court has been unable to find any case which sustains respondent’s views that the failure to view premises or to make an inspection of work involved is cause for setting an award aside. Certainly a judge, sitting as a trier of the facts in a regularly constituted court, could not be required to make an inspection under the circumstances here prevailing. The rule can be no different in the case of an arbitrator or arbitrators.
In American and English Annotated Cases (Yol. 8 [1908], p. 511), an old English ease is summarized as follows: “ Where the dispute referred to arbitrators concerned the condition of a building, and the master was requested by one of the parties to go and inspect the premises, upon a motion made to set aside the award because of the failure of the master to view the building, Erie, O. J., said: 1 know no law which makes it imperative on the master or any other arbitrator to go and look at the premises. It is entirely a matter for his discretion. There will consequently be no rule. ’ The rest of the court concurring, the rule was refused. Munday v. Bluck, 9 C. B. N. S. 557, 99 E. C. L. 557.”
In Matter of Avila Fabrics (135 N. Y. S. 2d 182 [1954]), Mr. Justice Cavagax, sitting in New York County Special Term, denied a motion to vacate an arbitrators’ award which was predicated upon the arbitrators’ refusal to visit a warehouse to inspect the allegedly damaged merchandise involved in the dispute with this language (p. 183): “Where, as here, the arbitrators received what they unquestionably considered some evidence of the controversial issue [a purported sample of light goods] but refused to adopt the petitioner’s unusual recommendation to view at. a place away from the hearing other evidence on that issue, then the arbitrators ’ admission or denial of evidence is not subject to review by this court.”
The respondent, in its memorandum, concedes ‘ ‘ that arbitrators have and should have a very large measure of discretion in deciding whether to make an inspection trip, particularly when it will involve an interruption of their own lives as arbi *927 trators, which would certainly have been the case here as the trip would have required a full day,” but contends that “ In this ease respondent naturally put on its case first and in doing so it expected of course that the arbitrators would carry through with their indicated decision in favor of inspection of the premises ” and that “Respondent was thus prejudiced in that it was misled as to the intentions of the arbitrators in putting on its direct case and in not having the opportunity to point out on the grounds the respects in which petitioner’s performance of his contracts was deficient.”
Accepting, arguendo, respondent’s contention that both sides requested the arbitrators to inspect the premises, and that the arbitrators agreed that it would be desirable to do this as requested by both parties, and that later on “ During one of the hearings when the subject was again renewed, the arbitrators indicated that they had made up their minds that inspection of the property by them was not necessary and that they would not agree to travel to Bridgehampton to make such an inspection,” the proof here falls far short of a showing that the arbitrators’ refusal was not within the very broad powers of discretion properly entrusted to arbitrators, or that it constituted misconduct and misbehavior within the meaning of section 1462 of the Civil Practice Act.
The record is also barren of any proof that respondent, after learning of the arbitrators’ decision against personal inspection, was deprived of an opportunity to produce and examine any witnesses it saw fit. Respondent does not contend that it made any application of any kind or nature to the arbitrators with regard to producing further testimony after becoming aware of the arbitrators’ inspection ruling. In the absence of any such request — and its denial, which may not be presumed — respondent’s present contention seems like an afterthought. It must be and is overruled.
The second point urged by respondent as a ground for denial of petitioner’s motion to confirm the award, and in support of its cross motion to vacate the ward, “ is that the arbitrators prevented respondent, for no reason at all, from examining petitioner’s engineering witness as to what he had observed concerning the aspects of petitioner’s work claimed as defective by respondent.”
The testimony of this witness (Kammerer), says respondent’s counsel, ‘ was curiously restricted however by action of the arbitrators ” because although the “ arbitrators did not interfere with cross examination of Mr. Kammerer concerning the topics about which he testified on his direct examination ” they *928 ruled — “whenever I attempted to obtain from Mr. Kammerer an answer outside the scope of his direct examination ” — that Mr. Kammerer ‘ could not be examined outside the scope of his direct testimony.” Therefore, says respondent, “For the reasons stated I consider that their erroneous rulings were highly prejudicial to respondent and amounted to misconduct and misbehavior.”
As was to be expected, petitioner, in his affidavit, says that “it seems inconceivable that after fifteen days of protracted hearings where the arbitrators extended the widest latitude to the attorneys for both sides, that either attorney can now complain that he was frustrated as to the extent of the examination of a witness,” and he asks “ How can it be urged that an error in the ruling on the admissibility of evidence is tantamount to misconduct and misbehavior.”
He is right, for there was during the hearing no refusal to hear evidence pertinent and material to the controversy (Civ. Prac. Act, § 1462; Gervant v. New England Fire Ins. Co., 306 N. Y. 393), nor was there here, as in Halstead v. Seaman (82 N. Y. 27, 30-31), “ The refusal of an arbitrator to examine witnesses ”, in which case it was held “ sufficient misconduct on his part to induce the court to set aside his award ”.
Neither is Kirshbaum Fabrics Corp. v. Greenfield, Inc. (80 N. Y. S. 2d 443), cited by respondent, in point. There a letter dated “ September 18, 1947, was expressly made an issue of dispute by the letter of December 10,1947, initiating the arbitration and by the very terms of the agreement of submission to arbitration” (p. 447). The arbitrators refused to pass upon the controversy between the parties created by the letter of September 18 and their award made no reference to the disposition of that controversy. Under such circumstances, said the court (p. 447):
“ The award, as made, was not and is not a final and definite award ‘upon the subject-matter submitted.’ § 1462, C. P. A., subd. 4. The respondent was entitled to have heard, considered and determined the issue expressly submitted under the arbitration submission agreement arising under the letter of September 18, 1947.
“ The award makes no reference thereto and does not pass upon or determine it; the arbitrators have made, not a final and definite award of all the issues submitted, but only a partial decision or award on only two of the three issues involved.” (Italics in original.)
Respondent, in its memorandum on this point, says ‘ ‘ Respondent wishes to make it clear that it does not here challenge the *929 good faith of the arbitrators,” but it concludes that under section 1462 of the Civil Practice Act “by themselves these errors justify vacation of the award which petitioner seeks to confirm.”
No written transcript of the proceedings was had, and where the validity or invalidity of an award rests upon the differing recollections or inferences of interested participants as to what happened in the arbitration proceedings proper, and where there is no convincing evidence to establish misconduct, the presumption is that the arbitrators performed their duty. (Matter of Shapiro [Gordon], 197 Misc. 241.) Here there was, at most, an alleged erroneous ruling with reference to a line of questions sought to be propounded of a witness. Under such circumstances, unless it is “ plainly established ’ ’ that the arbitrators were guilty of “ ‘perverse misconstruction or positive misconduct ’ ’ ’, their award ‘ ‘ cannot be set aside for mere errors of judgment, either as to the law or as to the facts ”. (Matter of Campe Corp. [Pacific Mills], 275 App. Div. 634, 635.) Such errors are not subject to judicial review (Brighton Mills v. Rayon Corp of America, 282 App. Div. 669; 282 App. Div. 670), for parties who desire and submit to arbitration waive and forego provisions of law ordinarily applicable to judicial actions and proceedings and leave all questions of law and fact, including rulings on questions propounded, for decision by the arbitrators. (Matter of Penco Fabrics [Louis Bogopulsky, Inc.], 1 A D 2d 659.)
Arbitration “ is a contractual method for settling disputes in which the parties create their own forums, pick their own judges, waive all but limited rights of review or appeal, dispense with the rules of evidence, and leave the issues to be determined in accordance with the sense of justice and equity that they may believe reposes in the breasts and minds of their self-chosen judges. All this they choose for themselves, subject only to the statutory grounds for vacatur of the award, as set forth in section 1462 of the Civil Practice Act.” (Matter of Spectrum Fabrics Corp. [Main St. Fashions], 285 App. Div. 710, 714-715, affd. 309 N. Y. 709.)
We find no such “ statutory grounds ” here in the rulings alleged to have been made by the arbitrators. Hence, this ground for vacatur, too, must be overruled.
We now come to respondent’s prayer for alternative relief in which it asks that paragraph “ e ” of the arbitrators ’ award be amended to read as follows: “ The total amounts due under paragraphs numbered 1 and 3 of this Award, minus the Five Hundred Thirty-four Dollars and twelve cents ($534.12) *930 to be paid by colasante to bridgehampton under paragraph 2, shall be considered to be the proper amount of colasante’s mechanic’s lien without necessity of proving the amount of the claim in any foreclosure proceeding brought by colasante. The lien shall be withdrawn upon payment of these amounts.”
In petitioner’s ‘ answer and counterclaim” to the original demand for arbitration, Item “ e ” of petitioner’s prayer for relief reads as follows: ‘ ‘ Instructions that when the decision of the arbitrators is rendered and confirmed said decision and proof shall apply to the mechanic’s lien filed by said contractor and to the foreclosure of said mechanic’s lien without the necessity of going through formal proof in said foreclosure.”
In its brief submitted to the arbitrators the respondent, at pages 93 and 94 thereof, states: “ The final item asks that the arbitrators order that any award in favor of Mr. Colasante be made applicable to Mr. Colasante’s mechanic’s lien without need for formal proof. BRRC has no objection to the suggested procedure ’ ’.
The arbitrators having made an affirmative award in favor of the petitioner Colasante and against the respondent, in item “ e ” of said award, found as follows: “ e. In accordance with Item E of colasante’s counterclaim and the agreement thereto expressed at page 93, 94 and 96 of bridgehampton’s brief, the total amounts due under paragraphs numbered 1 and 3 of this Award, minus the Five Hundred Thirty-Four Dollars and Twelve Cents ($534.12) to be paid by colasante to bridgehampton under paragraph 4, shall be considered the proper amount of colasante’s mechanic’s lien without necessity of going through formal proof of foreclosure. The lien shall be withdrawn upon payment of these amounts.”
The respondent asks for a modification of the award because it contends that the language used by the arbitrators goes further than either of the parties intended “ by suggesting that the petitioner need not bother with a foreclosure proceeding at all ” and that “ on this point respondent merely wishes to make certain that the award cannot be read to deprive it of defenses it has in a foreclosure proceeding other than those directed to the amount or validity of petitioner’s claim.”
On this prayer for alternative relief and for a modification of the award, it need merely be pointed out that the arbitrators’ award adopted almost verbatim the language of the petitioner’s answer and counterclaim, to which the respondent said it had no objection. The answer and counterclaim ask that the “ decision * * * shall apply to the mechanic’s lien filed by *931 said contractor and to the foreclosure of said mechanic’s lien without the necessity of going through formal proof in said foreclosure.” The award recites that the amount found due “shall be considered the proper amount of Colasante’s mechanic’s lien without necessity of going through formal proof of foreclosure.” (Italics supplied.)
Whether the respondent may now validly contend, as it asserts, that it has a defense against foreclosure, based on section 34 of the New York Lien Law, in that petitioner’s notice of lien willfully exaggerated the amount of its claim and because petitioner may have allowed its mechanic’s lien to lapse, need not now be determined. It suffices for present purposes to deny the alternative relief requested because the award of the arbitrators is in language to which the respondent itself agreed.
Under the circumstances the motion to confirm the award is, in all respects, granted and the cross motion to vacate said award or, in the alternative, to modify the same, is, in all respects, denied.
Settle order.