J. Irwin Shapiro, J.
Petitioner moves for an order confirming an award of arbitrators and for judgment thereon. The respondents cross-move ‘ ‘ for an order vacating said award of arbitrators, or referring any questions of fact which may be raised on such cross-motion to an Official Beferee, or heard in open Court.”
On July 19 and 28,1949, petitioner, as owner, entered into two contracts for the performance of plumbing, heating and oil burner work and the furnishing of all materials by the respondents in two building projects containing in the aggregate 550 garden-type apartments for the combined contract sum of $541,700.
Sometime after respondents commenced performance under their contracts, a dispute developed with petitioner as to their compliance with the contracts and the petitioner thereupon terminated such contracts. Thereafter, and on or about July 12, 1950, respondents as plaintiffs, commenced an action in the Supreme Court, Kings County, against the petitioner and others to recover the sum of $550,000 claiming that they (respondents herein) were induced to enter into the two contracts through *147 false and fraudulent representations that (1) the work required thereunder could he performed for $550,000 (including profit) and (2) the Federal Housing Administration had estimated that said sum would be adequate for the performance of the work required.
Respondents, as plaintiffs in the Kings County action, then served an amended complaint alleging that there had been an executed rescission of the contracts, as a result of which, they claimed there was due them for the value of their work, labor, services and materials furnished a balance of $322,848.74. Each of the two contracts contained a clause reading as follows: “ 13. Any controversy or claim arising out of or relating to this contract or any breach thereof shall he settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association and judgment upon the award rendered may be entered in any court having jurisdiction.” Accordingly, the petitioner herein moved to stay the action contending that the respondents were by the above provision of the contracts restricted to arbitration as the sole method of settling the dispute and obtaining the relief sought in their plenary action. Special Term held the motion for a stay of the action in abeyance pending the determination of framed issues to he resolved by a jury under the provisions of a companion order made simultaneously therewith. Upon appeal, the Appellate Division affirmed the order holding the motion for a stay in abeyance and modified the companion order merely with respect to the framed issues. (Horowitz v. Alley Pond Apts. No. 1, 280 App. Div. 866.)
The subsequent trial of the framed issues resulted in a verdict in favor of petitioner, which thereupon obtained a favorable decision on its motion to stay respondents’ Kings County action. An order, dated March 5,1957 was obtained staying said action until arbitration was had in accordance with the terms of the two contracts.
On May 6, 1957 the respondents demanded arbitration and set forth a claim for damages aggregating $1,047,924 ‘£ less the sum of $367,609 ” theretofore paid to them, or, in the alternative, other relief. Petitioner by an answering statement requested £ £ that an award be made disallowing and dismissing all of the claims asserted (by respondents) herein.”
The arbitration was begun before one arbitrator, Mr. D, but shortly thereafter two additional arbitrators were added, one of whom, Mr. P., was chosen as the chairman of the panel. Some 66 hearings were held and the parties adduced extensive proof in support of and against their respective claims. The final *148 hearing before the arbitrators was held on March 21, 1959; both parties submitted 11 summation ’ ’ memoranda on April 26, 1959, and reply briefs on May 8,1959.
On June 26, 1959 the arbitrators unanimously found for the petitioner by an award in writing, which, in paragraph 1, determined that: “ The claims by the co-partnership of samuel hobowitz and abraham rubih, hereinafter individually and jointly referred to as horowitz, against big-w construction core., hereinafter referred to as big, are disallowed.” Paragraphs 2 and 3 of the award provided for the payment of the administrative fee and expenses, the arbitrators’ compensation and the division thereof. Paragraph 4 of the award provided that ‘ ‘ This award is in full settlement of the claims submitted to arbitration herein.”
Although the questions posed by the two motions herein are comparatively simple, the verbosity and animosity of counsel have necessitated the reading of more than 436 pages of testimony, affidavits and exhibits (not including the transcript of the hearings which has not been submitted), much of it not germane to the motions before the court.
We are met preliminarily with an objection by the respondents * ‘ to the venue of this proceeding ’ ’, based upon their contention * ‘ that these motions should be referred to Kings County and be there determined.” There is no merit to this objection. Not only have the respondents themselves cross-moved for relief in Queens County, but it is undenied that the petitioner “ is a corporation authorized and existing under and by virtue of the laws of the State of New York, having its principal place of business at 138-50 78th Avenue, Kew Gardens, Borough and County of Queens, City and State of New York.” Accordingly, and in the absence of a specification in a contract or submission to arbitration giving sole jurisdiction to a particular tribunal “ the supreme court for the county in which one of the parties resides or is doing business, or in which the arbitration was held, shall have jurisdiction.” (Civ. Prac. Act, § 1459.) Inasmuch as no specification was contained in either of the contracts between the parties as to the county in which arbitration was to be held, and petitioner is both a resident of Queens County and doing business therein, the venue of the motion to confirm the award was properly laid in that county. In any event, the venue of the instant motions in Queens County was proper under rule 63 of the Rules of Civil Practice since that county, although in a different judicial district, adjoins Kings County.
Respondents’ objections to the confirmation of the award are most numerous. Although all have been carefully considered, *149 merely those upon which the respondents principally rely will be discussed.
(1) The major assault upon the award is based upon the alleged concealment by Mr. P., an attorney, of his professional background in the biography which he furnished to the American Arbitration Association under whose auspices this arbitration was conducted. Mr. P., as already noted, was chosen the chairman of the three-man panel herein.
The record shows that respondents have been keenly disappointed with the outcome of the litigation in Kings County and that in connection therewith complaints were made to the Appellate Division about some of the Justices before whom aspects of the litigation came on for disposition and that a letter was written to the Appellate Division about alleged misconduct by one of the counsel for the petitioner herein. With that background, and in respondents’ frame of mind, it may not be doubted, as they say, that they carefully “screened” the lists of prospective arbitrators. Following this very careful screening, Mr. P. was accepted by the parties as one of the three arbitrators. However, says respondents’ counsel, who did all the screening and interviewing: “ There was no disclosure and I did not have the slightest knowledge or information that Mr. P., a lawyer who sought quasi-judicial office, had served his very clerkship in the office of A. T., Esq., * * * who was heavily involved in the F. H. A. Senate Banking Investigation, on the side of builders and developers, this dummy petitioner’s principals. I annex hereto as Exhibit ‘ 2 ’ photostatic copies of a few of the public newspaper clippings in my files at that time concerning Mr. T., W. [one of the principals in petitioner corporation], and his partner D. M. in a ‘ 608 ’ windfall project, a client of Mr. T. Mr. T. was under indictment, at that time at least, and had I the slightest idea that Mr. P. had been associated with him or had set foot in that office for any business purpose whatsoever, I would never accept him as Arbitrator in this type of case. ’ ’
After then setting forth the fact that one of the attorneys for the petitioner is in the same building as the law firm of Mr. A. T. and that ‘1 they did business together over the years representing the same interests and the same people ”, the respondents conclude through their attorney that “ My whole investigation of Mr. P. and everything I sought to prevent was frustrated by this concealment. He could not help but know these people and he was disqualified and should have disqualified himself the moment he learned the nature of the case.”
*150 There is not the slightest basis in fact for this assault upon the character of Mr. P. or his right to serve as an arbitrator in this case. The record makes it clear that his only connection with Mr. T.’s law firm was as a $25-a-weok clerk for about 10 weeks or less in the year 1946 before Ms admission to the Bar. Under the circumstances, the omission to state such employment was not concealment. There was no need to dwell upon it or to reveal it. The questionnaire filled out by Mr. P. required information, in part, as follows:
‘ ‘ 4. Business or professional experience:
* # #
“ (b) Past firms and positions.”
The average lawyer, called upon to recite his ‘ ‘ business or professional experience” and his “past firms and positions” certainly would not think that he was being asked to give the name of a law office where he had worked briefly not as a lawyer but as a law clerk.
However, respondents’ objection in this regard is even more specious for it is clear, contrary to the broad conclusory allegations of their attorney, that Mr. T.’s law firm never had any connection with any of the principals in this case and that the Mr. M. who is mentioned as having been from time to time associated with the petitioner or its principals was never represented by Mr. T. or his office, directly or indirectly, nor has any corporation, partnership, group or syndicate with which he has ever ‘ ‘ been associated ever been represented by Mr. T. or by his office, directly or indirectly. ’ ’
To contend that because Mr. T.’s law firm represented other builders who were interested in the so-called section 608 buildings and was himself involved in the Senate investigation into section 608 abuses, a person, who was employed by that law firm as a clerk some three years before the subject contracts were entered into, was disqualified from sitting as an arbitrator on a contract involving the erection of a section 608 building is manifestly absurd. By that test a former public prosecutor would be disqualified from serving as a judge in a criminal case; a plaintiff’s negligence lawyer, or an insurance company lawyer defending against tort actions could, on ascending the bench, never sit in the trial of a negligence case; and a lawyer, who represented a particular bank or banks, could not upon becoming a judge sit on the bench in cases involving other banks. Such a theory is untenable.
The underlying basis of the attack on Mr. P falls of its own weight. It has no more substance than the ancillary contention, *151 expatiated on at length in respondents’ papers, that because Mr. T.’s law firm is in the same building with the law firm of the petitioner herein, Mr. P., a former law clerk in the T. firm for a brief period, was disqualified from acting as an arbitrator herein.
(2) Respondents allege that as ‘£ time went on, in the hearing's before the Board o£ three arbitrators, Mr. B. [one of the arbitrators], visibly to all, regularly went to sleep, in the morning or afternoon, sometimes both, and usually longer after lunch.” So far as the record discloses, respondents have made that claim for the first time on their cross motion to vacate the award. Assuming, arguendo, that this claim is true and that Mr. B. did in fact sleep through part of the hearings, respondents could not permit this condition to continue over some 66 sessions, gamble on the outcome of the proceedings, and then protest when the award in arbitration turned out to be against them. It is obvious that the arbitrator’s alleged “sleeping” would not have concerned them if the award had gone their way. A contention thus made after the rendition of the award does not commend itself. It seems to be a plea born of desperation and is apparently in direct contradiction to the statement made by respondents’ attorney in a letter to the American Arbitration Association in which he said of this particular arbitrator, though at an earlier stage of the proceedings, that “ His grasp of the issues in view of the meager information which he could have had prior to our opening statements, is remarkable.” In any event “ the entire written transcript of the testimony of all witnesses, together with all exhibits were submitted to each of the arbitrators prior to the rendering of their award.”
(3) Respondents also contend that in violation of an agreement between the parties and the executives of the American Arbitration Association, that £ 1 the Arbitrators would not obtain” the information as to who was advancing the funds to pay them for their services, and petitioner’s attorneys’ promise “ that they would not divulge this highly prejudicial information”, petitioner’s counsel, “ Almost at the commencement of hearings before the new Board * =::= * brazenly in violation of every ethical and moral concept, informed the Arbitrators that he was paying them ”.
Petitioner denies that information with reference to the source of the payment or advance of the arbitrators’ fees was to be kept secret from the arbitrators. It contends that the agreement for the advance nowhere contained £ £ a restriction against informing the arbitrators of the nature of the said stipulation” and that, in fact, “the stipulation by its very *152 terms requires the arbitrators to take cognizance of the advance deposits by stating, after providing for such advance deposits by Big-W: ‘ 3. The Arbitrators and their award shall make such allocation of the aforesaid advance deposits as they deem just and proper.’ ”
Whatever the truth may be is of no moment in light of the ensuing situation. For some period of time after the making of the foregoing stipulation petitioner made the payments required thereunder directly to the American Arbitration Association as required by its rules. There came a time, however, when the petitioner ceased to advance such payments. When this happened “ the American Arbitration Association had told the arbitrators of the cessation, by * * * petitioner, of the advancement of the arbitrators ’ fees. ’ ’ Petitioner felt aggrieved by this disclosure and 1 ‘ made a motion before the arbitrators that they disqualify themselves and remand the matter to the American Arbitration Association.” The respondents vigorously opposed this motion and demanded that the hearings continue. At that time, respondents were fully atoare of the fact that petitioner, by its counsel, had repeatedly revealed ivho was advancing the arbitrators’ fees. Nevertheless, they opposed the motion to have the arbitrators disqualify themselves. Respondents thereby clearly estopped themselves from raising the contention now belatedly asserted that such disclosure to the arbitrators was allegedly in violation of the stipulation or of their substantive rights to a fair and impartial determination. With full knowledge of the facts they insisted that the arbitrators continue to serve. They thus steered their own course and they may not, now that the voyage has ended, seek to retrace their steps.
(4) Another objection by respondents stems from an investigation made to determine what kind of sewer pipe was used. A dispute arose between the parties involving a claimed extra of $13,686.75 in connection with which respondents contended that they had installed certain pipe and that it was “ cast iron ”. The petitioner’s witness “testified that the pipe was vitreous tile ” and that it had been installed not by the respondents but by one Carmine Ambrosio. The arbitrators “ required that Big-W excavate the pipe on the day of the inspection at a point designated by the Arbitrators. ’ ’
It thereafter appeared that excavation of the sewer by hand “ would take two men at least a day to complete ” so that the sewer excavation had to be commenced at least one day prior to the arbitrators’ visit to the site. The arbitrators determined ‘ ‘ that rather than designate the place for excavation in advance *153 of the visit to the site they would do so on March 21,1959, while visiting the site and arrange for an inspection thereafter.” On that day and pursuant to a stipulation of the parties, Mr. C., one of the arbitrators, in the presence of counsel for both sides ‘1 designated a limited area on the plot plan ’ ’ as the point where the excavation was to take place. It was further agreed that one of the attorneys for the petitioner “ be given the confidence of all parties to direct the excavation ” at a spot chosen by him in the “ agreed area of Horowitz’s performance ” as picked out by the arbitrator, Mr. C. It is contended by respondents that on March 23, 1959, two days before the inspection was made by Mr. C., one of their counsel “ went out to see if the digging had started ” and when he found it had, he was advised by a laborer who was digging that the excavation was ‘£ at the identical spot where the same laborer had dug up the pipe two months ago. ’ ’ Respondents contend that one of their attorneys, on March 25, 1959, the day of the inspection, requested of Mr. C. that a hearing be held on that matter before the arbitrators; that not only was there no hearing on that' matter, but that counsel had learned from Mr. P., after the award, that Mr. C. ££ did not even make known my partner’s information to his fellow Arbitrators.”
It appears, however, from the affidavit of Mr. C. that:
‘1 At the inspection on March 21, 1959, and by agreement of the Arbitrators present and Counsel for the parties, I designated a limited area on the plot plan of the subject job and Mr. DuPont or his clients were authorized to select the specific spot in the area for the excavation.
££ At the inspection on March 25, 1959, Mr. Stull complained that the excavation was at the same spot which had been dug up some time previously. Two or three laborers stood around at the time but none of them confirmed his statement. I related this subsequently to both Mr. P. and Mr. D. [the other two arbitrators] but we decided as Mr. Robert A. Stull had not made any request for reopening of the hearings, we would rely on the result of this inspection with respect to the nature of the pipe.” (Emphasis supplied.)
On the inspection held on March 25, 1959 in the limited area designated by Mr. C., “ it was found that the sewer pipe was constructed of vitreous tile and not cast iron as testified to by the witnesses of Horowitz and Rubin,” the respondents herein. The respondents’ contention would seem to imply that Mr. C. was told in advance exactly what point in the land to pick out, and that he had lent himself to a conspiracy in that regard. The record is barren of any such proof. It is inconceivable that the respondents’ counsel, considering the extreme *154 care and precision of their every step in this controversy, would not have obtained the name of this laborer who was digging “at the identical spot where the same laborer had dug up the pipe two months ago ” or that they would have failed to bring their present contention formally before the arbitrators at one of their sessions.
The alleged revelation to one of respondents’ attorneys by an unidentified laborer does not rise to the dignity of creating an issue in this regard. Mr. C., in his affidavit, makes it crystal clear that he and he alone “ designated a limited area on the plot plan of the subject job ” on March 21, 1959, and that the excavation was made in the area thus designated by him. There is no merit to the contention attempted to be raised by the respondents in this regard.
(5) Respondents’ further objection to the confirmation of the award is that in connection with its claim for $75,000 Mr. P. “ ruled that the Board would not hear any evidence of this claim, which is shown by the Statement of Claims to be likewise inextricably interwoven with the remainder of Horowitz’s claims.” According to the petitioner, however, “ after Respondents had concluded their rebuttal and Petitioner was concluding its rebuttal, Mr. Stull [respondents’ attorney] sought to reopen his direct case by submitting additional testimony on Claim No. III. All three aribtrators, after consultation, concurred in a ruling that ample opportunity had prior thereto been afforded Mr. Stull to present all his claims fully. ’ ’
The transcript of the testimony before the arbitrators has not been submitted. In such a situation, the court must necessarily assume the regularity and propriety of the ruling made by arbitrators. Whether a case should be reopened for the taking of additional testimony rests within the broad discretion of the arbitrators, and even an abuse of such discretion, in the absence of misconduct, would not be ground for setting aside an award. Before an award can be set aside, there must be an improper refusal to hear testimony pertinent and material to the controversy (Civ. Prac. Act, § 1462; Gervant v. New England Fire Ins. Co., 306 N. Y. 393), or a refusal of an arbitrator to examine witnesses, in which case it would be £ £ sufficient misconduct on his part to induce the court to set aside his award.” (Halstead v. Seaman, 82 N. Y. 27, 30-31.)
Mere limitation by arbitrators of the length to which an examination shall proceed or their refusal to vary the ordinary order of proof by reopening a case in chief for the taking of additional testimony from a witness or upon an issue which *155 has been met at length are, when exercised in good faith, merely rulings in the course of a trial which cannot, even if erroneous, constitute a basis for the setting aside of an award. As this court said on this general subject in Matter of Colasante (Bridgehampton Corp.) (16 Misc 2d 923, 929): 11 Here there was, at most, an alleged erroneous ruling with reference to a line of questions sought to be propounded of a witness. Under such circumstances, unless it is 6 plainly established ’ that the arbitrators were guilty of ‘ ‘ preverse misconstruction or positive misconduct ’ ’ their award ‘ cannot be set aside for mere errors of judgment, either as to the law or as to the facts.’ (Matter of Campe Corp. [Pacific Mills], 275 App. Div. 634, 635.) Such errors are not subject to judicial review (Brighton Mills v. Rayon Corp. of America, 282 App. Div. 669; 282 App. Div. 670), for parties who desire and submit to arbitration waive and forego provisions of law ordinarily applicable to judicial actions and proceedings and leave all questions of law and fact, including rulings on questions propounded, for decision by the arbitrators. (Matter of Penco Fabrics. [Louis Bogopulsky, Inc.], 1 A D 2d 659.) ”
In Matter of Spectrum Fabrics Corp. (Main St. Fashions) (285 App. Div. 710, 714-715, affd. 309 N. Y. 709), the Appellate Division of the First Department observed: 66 The fact is that an agreement to arbitrate, as authorized by statute, is a contractural method of settling disputes in which the parties create their own forums, pick their own judges, waive all but limited rights of review or appeal, dispense with the rules of evidence, and leave the issues to be determined in accordance with the sense of justice and equity that they may believe reposes in the breasts and minds of their self-chosen judges. All this they choose for themselves, subject only to the statutory grounds for vacatur of the award, as set forth in section 1462 of the Civil Practice Act. ’ ’
There are here no such i£ statutory grounds ” in the refusal by the arbitrators to take additional testimony on Claim No. ITT when in their opinion that matter had been fully developed on respondents’ prime case. This ground of objection to the award is, therefore, overruled.
All of the other numerous contentions raised by respondents have been carefully considered. To discuss each one formally would expand this opinion unduly. The court realizes that the respondents are understandably distressed with the unfavorable results obtained by them both before a jury and a board in arbitration. It should be remembered, however, that these *156 respondents voluntarily entered into contracts containing provisions for arbitration. They must be deemed to have done so with full knowledge of the fact that thereby they dispensed with many of the safeguards which surround courtroom litigation, and that they thereby effectually waived their right to review erroneous rulings made in the course of the hearings or to protest against irregularities which might be sufficient in a court of law to vitiate a verdict or a judgment. Where the record fails to establish affirmative misconduct on the part of the arbitrators or any conduct on their part which has fundamentally affected or improperly invaded the rights of the respondents, the arbitrators’ award may not be vacated. In Matter of Colasante (supra, p. 929) this court said, “where there is no convincing evidence to establish misconduct, the presumption is that the arbitrators performed their duty. (Matter of Shapiro [Gordon], 197 Misc. 241.) ” That statement applies in full measure to the motions now before the court. Allegations and charges by the respondents abound throughout their papers, but “ there is no convincing evidence to establish ” them.
Perhaps a word should be said about the allegations in the various affidavits of respondents’ counsel with respect to admissions alleged to have been made by the arbitrators after the rendition of the award. The practice of interviewing arbitrators after an award has been made in an effort to find out what motivated it, and if possible, to find out from their reasoning a flaw upon which to base an attack upon their award, is to be deplored both as an unwholesome practice and because the results of such endeavors have no efficacy as a matter of law. Our public policy, as enunciated by decisional law, has made it manifest time and again that arbitrators, jurors or other persons sitting in similar capacities, may not by their own statements made after their determination, impeach it. (Matter of Weiner Co. [Freund Co.], 2 A D 2d 341; Sindle v. 761 Ninth Ave. Corp., 127 N. Y. S. 2d 258, affd. 283 App. Div. 939.)
Thus in Matter of Weiner Co. [Freund] (supra, p. 342) the court said:
‘ ‘ More than a century ago it was held that parol evidence, even of an arbitrator, to contradict or impeach an award, was inadmissible (Doke v. James, 4 N. Y. 568, 575).
‘ ‘ An arbitrator should not be called upon to give a reason for his decision. Inquisition of an arbitrator for the purpose of determining the processes by which he arrives at an award, finds no sanction in law (Bernhardt v. Polygraphic Co., 350 U. S. 198, 203; Matter of Shirley Silk Co. v. American Silk Mills, 257 App. Div. 375, 377). ”
*157 The motion of the petitioner to confirm the award is in all respects granted, and the cross motion of the respondents to vacate said award and for alternative relief is, in all respects, denied. Proceed accordingly.