In the Matter of the Arbitration between FIRST NATIONAL OIL CORPORATION, Appellant, and RAFAEL ARRIETA et al., Copartners Doing Business as FLORIDA MOLASSES COMPANY, Respondents.

Second Department, December 3, 1956.

*Monroe Collenburg* and *Timothy P. Walsh* for appellant.

*Charles W. Hagen* and *Richard A. Hagen* for respondents.

WENZEL, J. In February of 1948 appellant entered into a written contract with respondents, a copartnership, which required appellant to transport in its named vessel a cargo of 9,500 tons of blackstrap molasses (10% more or less) in bulk, from a port or ports in Puerto Rico to Jacksonville, Florida.

The contract is captioned " Tanker Voyage Charter Party ". By agreement subsequently made, the stated vessel was replaced by another, the S. S. *George Ogden*.

After a voyage of four days out of Puerto Rico, the S. S. *George Ogden* arrived at Jacksonville on May 7, 1948 with the stated cargo, and the unloading operation began within the hour, by means of pumping the molasses through respondents' pipeline into their shore tank, using the ship's pump. The process continued until the night of May 10, when respondents' representatives ordered it stopped because their tank had developed vibration due to pressure caused by air and foam in the tank. By that time, the entire tank was full, there being 25 feet of molasses and 5 feet of foam above that. During the pumping a considerable amount of molasses had been drawn from the tank into two smaller tanks and several tank cars. Considerable cargo loss ensued, consisting principally of molasses which remained in the ship and which was later dumped at sea because of lack of further storage facilities and inability to accomplish an immediate sale.

Thereafter, in pursuance of a provision in the charter party to arbitrate all differences and disputes arising therefrom, respondents' claim for this loss and for other incidental damages proceeded to arbitration before three arbitrators, each party appointing one, and the two thus chosen designating the third.

The arbitrators received the evidence which the parties presented and rendered an award in favor of respondents in the amount of $82,752.79.

Appellant then brought this proceeding to vacate the award on the grounds that the arbitrators had made obvious mistakes in determining the quantity of the molasses loss and in including a certain additional item of claimed damage, that the arbitrators were guilty of partiality toward respondents, and that the arbitrators had exceeded their powers and the award was invalid because one of the respondents, Joseph A. Lopez, Jr., had died after the submission of the matter to the arbitrators but prior to the making of the award, and nothing had been done pursuant to article 84 of the Civil Practice Act to substitute a representative of the deceased partner's estate as a party to the arbitration.

The Special Term rejected the claim of partiality and the contentions based on the omission to make a substitution in lieu of Lopez, but upheld the claim of obvious mistake in determining the quantity of the molasses loss, and on that ground vacated the award and remitted the matter to the same

arbitrators for rehearing and reconsideration on the evidence which had been submitted to them and on such other relevant and material proof as might properly be received on the rehearing.

Appellant, contending that the death of Lopez constituted a revocation and termination of the arbitration, and pursuing its position that the arbitration should proceed *de novo* before new arbitrators because of the claimed partiality, took this appeal.

By the express provision of section 1459 of the Civil Practice Act, arbitration of a controversy under a contract described in section 1448 of said act " shall be deemed a special proceeding ". Section 1448 describes the contract in question as one " to settle by arbitration a controversy thereafter arising between " the parties to the contract. Accordingly, the arbitration here in question was a special proceeding, and the provisions in the Civil Practice Act dealing with such proceedings are applicable to it.

" A special proceeding does not abate by any event if the right to the relief sought in such special proceeding survives or continues." (Civ. Prac. Act, § 82.) It is not contended, and it could not be contended with merit, that the respondents' claim for damages was such in nature that the right to the relief sought upon such claim in this arbitration did not survive or continue after the death of Lopez.

Upon the death of Lopez, the partnership became dissolved by operation of law (Partnership Law, § 62, subd. 4), the right of Lopez in any specific partnership property, which would include these arbitrated claims, became vested in the surviving partners (Partnership Law, § 51, subd. 2, par. [d]), and the right to wind up the partnership affairs devolved on the surviving partners (Partnership Law, § 68; see *Silberfeld* v. *Swiss Bank Corp.*, 273 App. Div. 686, affd. 298 N. Y. 776; *Groot* v. *Agens*, 107 N. Y. 633).

Since, as pointed out above, respondents' claim for damages did not abate, and since upon the death of Lopez all rights in this claim became vested in his surviving partners, upon whom also devolved the right to wind up the partnership affairs, substitution of a representative of the estate of Lopez would not have been proper (cf. *Silberfeld* v. *Swiss Bank Corp., supra*).

Turning to the claim of partiality and the contention that the arbitration should not be returned to the same arbitrators, we find the rule to be that vacatur of an award on the ground of " evident partiality " (Civ. Prac. Act, § 1462, subd. 2)

should be granted if suspicion upon the " entire impartiality " of the arbitrators is established (see *Matter of Lipschutz* [*Gutwirth*], 304 N. Y. 58, 65; *Matter of Friedman,* 215 App. Div. 130, 135, 136; *Matter of Knickerbocker Textile Corp.* [*Sheila-Lynn, Inc.*], 172 Misc. 1015, 1018, affd. 259 App. Div. 992). If an award be vacated on this ground it would of course be anomalous not to direct in the exercise of discretion, that the rehearing be had before new arbitrators.

However, in our opinion, no evidence was adduced upon which a finding could properly have been made that the arbitrators were guilty of partiality. It is true that the figure of 331,041 gallons, which the arbitrators found to be the amount of the molasses loss, was apparently taken by them from the brief which was submitted to them on behalf of the respondents and that such amount was arrived at by application of an erroneous theory of damages in that brief. We believe that this was an inadvertence, for the arbitrators in the body of the award subscribed to an entirely different theory of computing the quantity of molasses lost. Application of the theory to which they subscribed would have produced a finding of about half the amount found. Actual partiality toward the respondents would not have manifested itself in this manner, that is, by the assignment of a theory of damage which would produce a figure of about half of that which respondents' theory would produce, followed by the allowance of a figure so easily demonstrable to be completely at variance with the assigned theory.

We are further of the opinion that there is no warrant for the view that these arbitrators would be guilty of partiality in the further proceedings to be had.

The order, insofar as appealed from, should be affirmed, with $10 costs and disbursements.

Nolan, P. J., Ughetta, Hallinan and Kleinfeld, JJ., concur.

Order, insofar as appealed from, affirmed, with $10 costs and disbursements.