**TODD SHIPYARDS CORPORATION,**
**Plaintiff,**

v.

**INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, LOCAL 15, AFL–CIO, Defendant.**

**Civ. A. No. 391–63.**

United States District Court
D. New Jersey.

June 14, 1965.

O'Mara, Schumann, Davis & Lynch, Frederic W. Schumann, Jersey City, N. J., Cullen & Dykman, Robert B. Lisle, Brooklyn, N. Y., of counsel, for plaintiff.

Rothbard, Harris & Oxfeld, Abraham Friedman, Newark, N. J., for defendant.

SHAW, District Judge.

This is an action by plaintiff as employer against defendant union for declaratory judgment pursuant to 28 U.S.C. § 2201. Defendant, acting as the collective bargaining agent of employees of plaintiff, demanded arbitration of an alleged grievance. Plaintiff contends that the grievance asserted "presents no issue properly arbitrable" because the subject matter thereof had previously been determined by arbitration. Defendant denies that the Court has jurisdiction to determine the issue of arbitrability alleging that the grievance in question is not the same as the one previously presented for arbitration and it seeks by way of counterclaim: (1) an order compelling plaintiff to arbitrate the grievance in question, and (2) to vacate and set aside the prior award in arbitration in so far as it purports to dispose of the grievance now in question.

The matter has been submitted to the Court for disposition upon the pleadings and stipulated facts. The precise question presented is whether a previous arbitration award precludes arbitration of the grievance now asserted. Jurisdiction exists by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The pertinent facts may be briefly summarized as follows:

Plaintiff is a New York corporation which operates ship repair yards in Brooklyn, New York and Hoboken, New Jersey. Defendant is a labor organization having its principal office at 1312 Washington Street, Hoboken, New Jersey. It has been the bargaining agent for employees of plaintiff at the Hoboken yard since August 18, 1942, the first collective bargaining agreement having been made between defendant and Todd Hoboken Drydock, Inc., the predecessor corporation of the present plaintiff. The particular collective bargaining agreement, provisions of which are applicable to the pending litigation, was made on July 29, 1960. It was a joint labor agreement with plaintiff to which defendant and an affiliate union, Local 39, were parties. Members of defendant union were employed at the Hoboken yard of plaintiff. Members of the affiliate union, Local 39, were employed at the Brooklyn yard. For purposes of grievance and arbitration procedure, employees of plaintiff in the Hoboken yard are represented by defendant. Em-

ployees at the Brooklyn yard are represented by the affiliate union, Local 39.

Robert Bateman, an employee of plaintiff and a member of the defendant union, had been employed for many years by plaintiff at its Hoboken yard and had attained a seniority status as defined by the labor agreement. On April 18, 1961 his employment at the Hoboken yard was terminated by plaintiff on the ground of alleged disability due to loss of hearing.

As a consequence of the termination of the employment of Robert Bateman, defendant submitted a grievance on April 25, 1961. The labor agreement provided for a grievance procedure and for arbitration if the grievance was not satisfactorily adjusted and could not be settled between plaintiff and defendant. It also contained provision barring strikes or lockouts.

The grievance submitted on behalf of Robert Bateman on April 25, 1961 designated as 32–1961 read as follows:

"On Tuesday, April 18, 1961, R. Bateman badge 88006, department 24, night shift, employed since March 1943, was laid off.

"The Union demands that R. Bateman be returned to work and be paid for all time lost."

Plaintiff denied the grievance by letter dated May 1, 1961 wherein it stated:

"As we advised the Union representatives verbally on April 18, 1961, Mr. Bateman was being laid-off effective that date because of his physical deficiency in hearing (25% binaural loss of hearing), which makes it unsafe for both himself and his fellow employees to continue working in his occupation in our shipyard.

"The action taken was proper in our opinion and the Union's claim is therefore denied.

"It will be recalled that it was agreed that Steps II and III of the grievance procedure would be waived and that we would proceed to a prompt arbitration on the matter."

The parties then designated Richard T. Davis, Esq. as sole arbitrator [1] to hear and decide the grievance. He conducted a hearing on June 22, 1961 and made an award in favor of plaintiff on August 11, 1961. He found that plaintiff had a right to rely on the opinion of its physician that "Mr. Bateman's *discharge* was medically indicated." (Emphasis supplied.)

Bateman applied for further employment with plaintiff at its Hoboken yard on August 18, 1961 and his application was denied by plaintiff. The union responded by filing a second grievance designated as 55–1961 which read as follows:

"On August 18, 1961 this man applied to the Todd Shipyards Corporation of Hoboken, N. J. for employment, doing any kind of work which he was capable of performing.

"He was flatly refused and was told he could never be employed by the Todd Corporation again.

"This is a violation of Article XI, Section 7, of the existing Labor Agreement.

"Bateman had previously been terminated by the Company because of a physical impairment resulting from his 18 years of employment at Todd.

"He still retains his seniority, plus the physical ability to perform many and various types of jobs in the ship repair yard.

"The Union demands that Bateman be assigned employment immediately to work which is 'within his capacity to perform.' Article XI, Section 7.

---

1. While Article XXIII of the Labor Agreement provides for submission of grievances to arbitration by three arbitrators, there is no dispute about the fact that the parties waived a three-member arbitration board by agreement.

"The Union also seeks payment to Bateman for all time lost by him, from the date this grievance is presented until he is assigned to work 'within his capacity to perform.'"

Article XI, Section 7 of the labor agreement referred to in the grievance provides:

"Where an employee has been injured while employed on Company work and remains subject to partial disability or limitation, the Company, in so far as its operations permit, will endeavor to transfer such employee to some work which is within his then capacity to perform."

Plaintiff rejected the second grievance and defendant, after processing the same through the grievance procedure, requested arbitration and designated its member to serve on a board of arbitration. Plaintiff also designated its member to serve on the board but without prejudice to any right which it might have to dispute arbitrability. This litigation followed.

Parenthetically, it might be noted that Bateman did work at Todd's Brooklyn yard on October 1, 1961 for 8 hours and he shaped up at this yard on 5 other occasions during October and November, 1961. Finally he was removed from the payroll there on November 27, 1961 because of his failure to shape up for 12 days as required by the labor agreement. The fact that he did work for plaintiff on October 1, 1961 for 8 hours and shaped up subsequently at the Brooklyn yard is not considered to have any particular significance in connection with the basic issue here, to wit: Whether plaintiff had the right to refuse employment at the Hoboken yard by virtue of the arbitrator's disposition of grievance 32–1961.

Bateman's application for employment at plaintiff's Brooklyn yard was made on September 25, 1961 and he was hired as a machinist rigger without having taken a complete physical examination. His application made no reference to previous employment by plaintiff at its Hoboken yard. Personnel administration at the Brooklyn yard was separate and distinct from that at the Hoboken yard until November 9, 1961, after which the Personnel Director at the Brooklyn division acted as Personnel Director at the Hoboken division. It has been stipulated that it would have been futile for Bateman to shape up for work at the Hoboken yard after the award of the arbitrator in favor of plaintiff. It should also be mentioned that Article IX of the labor agreement relating to transfers [2] is not applicable to Bateman's case. There has been argument with respect to the terms "laid off" and "discharged" as they were used in connection with Bateman's termination as of April 18, 1961 and in the transcript of the proceedings before the arbitrator and reference thereto in his written opinion. Ordinarily the term "laid off" indicates a temporary cessation of employment and the terms "discharged" or "dismissed" indicate a complete and final termination. Plaintiff argues that Bateman's employment was completely and finally terminated on April 18, 1961 and that this termination was upheld by the arbitrator. Defendant contends that Bateman was merely laid off on April 18, 1961 and that, therefore, his rights under the labor agreement to have a further grievance processed continued. Whether the term "laid off" or the term "discharged" was used in describing the action that plaintiff took on April 18, 1961 is not of controlling significance.

Inquiry must be directed to the substance of the action as understood by the parties rather than to the choice of literal terms describing it. Hence, the Court must look to the intent of defendant in framing the issue for arbitration as made known to plaintiff by the language defendant chose to employ. In conjunction

2. Article IX, Section 3: The Company shall have the privilege, with the consent of the employees to be transferred, of transferring employees from yard to yard.
\* \* \*

with this, the Court must also examine the record of the arbitration proceedings to determine if the evidence adduced by each of the parties reflects common accord and understanding of the particularly defined grievance which the arbitrator deemed in his opinion to be the matter in issue. Disappointment with the result plus afterthought of a more narrow grievance that could have been presented is of no consequence. Defendant, in framing the issue of grievance and at the hearing thereon, could have limited it to the narrow question it now urges if it had desired to do so.

Defendant was aware of the fact that Bateman's employment was terminated because of his impairment of hearing "which makes it unsafe for both himself and his fellow employees to continue working in his occupation in our ship yard." The overall tenor of the evidence adduced at hearing related to a discharge because of the environmental element of noise prevalent in ship yard operations. It was developed at that hearing that Bateman had done practically every type of job in a ship yard so that his occupation was more in the nature of a ship yard worker than that of an employee particularly assigned to one specified class of work. The arbitrator in his opinion refers to the issue developed at hearing as one of whether the company had good and substantial cause to *discharge* Mr. Bateman. He concludes, "The fact that Mr. Bateman's discharge was in accord with Dr. Pflug's opinion was confirmed at the hearing when Dr. Pflug took the stand to give the opinion that Mr. Bateman's discharge was medi-

cally indicated." Dr. Pflug was the plaintiff's physician and he fixed a range of up to 18% binaural loss of hearing as non-hazardous. The employment of those having binaural loss of hearing in excess of 18% was not recommended. Bateman's impairment of hearing was in excess of 18%.

Article XI, Section 1 [3] of the labor agreement imposes upon plaintiff the obligation to maintain safe and healthful working conditions. Article XI, Section 7 of the agreement provides for transfers of employees suffering from disability only "in so far as * * * operations permit." The arbitration clause [4] conferring decisional authority on the arbitrator is broad in scope and it cannot be said here that the result reached constituted an abuse of the discretion entrusted to him by the parties.

As indicated, defendant contends that the instant grievance is a new and different grievance than the one previously submitted to arbitration. This Court cannot agree. The substance of the first grievance involved the right of Bateman to be employed at the Hoboken yard of plaintiff. This encompassed a right to be continued on the payroll regardless of the particular work to which he might be assigned. The arbitrator, construing the application of the pertinent portions of the labor agreement, concluded that plaintiff had a right to terminate Bateman's employment when the action taken was in accordance with the standard of health and safety fixed by plaintiff's physician.

 Ordinarily, where there is a broad arbitration clause as here, a griev-

---

3. "The Company will continue to exert every effort to provide and maintain safe and healthy working conditions and the Union will cooperate to that end and will encourage its members to work in a safe manner."

4. Article XXIII, Arbitration: In the event of any dispute or difference of opinion between the parties hereto as to any matter or thing arising out of, or relating to, this Agreement or any provision hereof, or the construction or application hereof, including a grievance of any em-

ployee not satisfactorily adjusted according to the procedure prescribed by Article XXII of this Agreement, which cannot be settled between the parties themselves, either party may require the matter in dispute to be submitted to arbitration by three arbitrators to be designated as provided in this Article. * * * The decision of any two of the three arbitrators thus chosen or appointed, when reduced to writing and signed by them, shall be final, conclusive and binding upon both parties hereto.

ance which arguably comes within the clause should be submitted to arbitration. United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). There is no dispute that, absent the first award, arbitration would clearly be required. Instead, the Court is faced with the problem of determining the effect of a previous award on the arbitrability of a subsequent grievance. Counterbalancing the liberal policy favoring arbitration is the policy favoring finality of arbitration awards. The harmony sought by arbitration as a substitute for work stoppage and elimination of industrial strife between labor and management could be jeopardized if repetitive submission to arbitration of the same grievance was permitted. Unless there is finality to an arbitration award as contemplated by the parties, there would be no inducement to accept a provision for arbitration in the labor agreement.

It is suggested by defendant that it is not within the jurisdiction of this Court to determine that the previous award in arbitration is *res adjudicata*. Defendant argues that *res adjudicata* is a defense on the merits and one for an arbitrator to determine on hearing of the instant grievance. In conjunction with this, it was also suggested that instead of construing the effect of the arbitration award by Davis, the Court remand to him to "rewrite it within limits to be indicated by the *Court's judgment*[5]." (Emphasis supplied.) Further, it should be noted that defendant seeks to invoke arbitration of its instant grievance by a three-member arbitration board.

The contention that *res adjudicata* is a defense on the merits would be persuasive in a situation where in the application of the doctrine it is necessary to resolve a genuine issue of material fact. Such is not the case here. The opinion of Arbitrator Davis is clear and unambiguous, precisely covering the subject matter of the grievance presented by defendant, i. e., Bateman's discharge from employment with plaintiff at its Hoboken yard. An award of an arbitrator acting within the scope of his authority has the effect of a judgment and is conclusive as to all matters submitted for decision at the instance of the parties. Panza v. Armco Steel Corp., 316 F.2d 69 (3rd Cir. 1963); See 5 Am.Jur.2d, Arbitration and Award, § 147. Moreover, finality of disposition of a grievance by arbitration is what the parties here contemplated by express provision in the labor agreement.

Summarized, defendant urges on the one hand by way of relief sought that the Court adjudicate its second grievance as arbitrable and disassociate it entirely from its previous grievance. But it recognizes that the decision of the arbitrator disposing of the first grievance might very well be construed as dispositive of the second grievance. Therefore, defendant urges in the alternate that the Court modify the effect of the decision made by the arbitrator or remand to him with direction to rewrite it.

Consonant with the limitation on the power of the Court to interfere with any determination of the arbitrator reasonably reached on the merits of a grievance, remand to the arbitrator is appropriate where there is reasonable ground for disagreement as to what he actually did decide. See International Association of Machinists, etc. v. Crown Cork and Seal Co., 300 F.2d 127 (3rd Cir. 1962); Transport Workers Union of Phila., Local 234 v. Philadelphia Transportation Company, 228 F.Supp. 423 (E.D.Pa.1964). But the power to remand should not be exercised unless there is patent ambiguity in the decision of the arbitrator or the text of it is not germane to the issue presented as reflected by the record of the proceedings before him. To remand under any other circumstances would be to suggest to the arbitrator that the Court differed in opinion with the result on the merits which had been reached by the arbitrator and would constitute an

---

5. Supplemental brief on behalf of defendant Union, page 11.

intrusion upon his exclusive function to pass upon the merits of the grievance.

 There is no basis upon which this Court can reasonably conclude that the decision of the arbitrator is ambiguous or that it constitutes a determination which went beyond and covered matter not encompassed within the issue of the particular grievance presented by defendant. Accordingly, the award of the arbitrator as written holding that plaintiff had a right to discharge Bateman will be enforced and the counterclaim of defendant dismissed.

An appropriate order for entry of judgment in favor of plaintiff and against defendant consistent herewith will be presented.