**LA VALE PLAZA, INC., a New York Corporation, Appellant,**

v.

**R. S. NOONAN, INC., a Pennsylvania Corporation.**

No. 16293.

United States Court of Appeals Third Circuit.

Argued March 9, 1967.

Decided May 26, 1967.

Norman C. Henss, Philadelphia, Pa. (Abraham L. Shapiro, Cohen, Shapiro, Berger & Cohen, Philadelphia, Pa., Harry J. Rubin, Liverant, Senft & Cohen, York, Pa., on the brief), for appellant.

Robert H. Griffith, York, Pa. (Arthur Markowitz, Markowitz, Kagen & Griffith, York, Pa., Henry W. A. Hanson, Jr., Harrisburg, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This appeal takes us into the difficult realm of the Pennsylvania law of arbitration with its distinction between so-called common law and statutory arbitration.

Appellant, La Vale Plaza, Inc., contracted for the construction of a shopping center by R. S. Noonan, Inc. Because a dispute arose regarding the amount due it, Noonan filed with the American Arbitration Association a demand for arbitration under the provisions of the contract.[1] Ultimately, on December 10, 1963, the arbitrators rendered an award in favor of Noonan in the amount of $30,861.64. Their award expressly declared that it was "in full settlement of all claims submitted to this arbitration one against the other."

Two months later, La Vale brought the present action to recover the amount of $25,568.02 which it alleged was due it as the difference between the award and a deposit of $56,429.66 which it had delivered to Noonan during the pendency of the arbitration proceedings in order to obtain a continuance of one of the hearings. Noonan in its answer alleged on the contrary that the $56,429.66 was a partial payment on account and left a balance in dispute which was decided by the award. Curiously enough, Noonan filed no counterclaim for the recovery of the amount of the award.

The district judge held that the dispute whether the sum of $56,429.66 was a deposit or a payment on account raised a material question of fact and he therefore denied Noonan's motion for summary judgment. In doing so, however, he ordered sua sponte that the award be resubmitted to the arbitrators for clarification of its meaning. For his power to do this the district judge relied on § 11 of the Arbitration Act of April 25, 1927,[2] which authorizes a court on the application of any party to an arbitration to modify and correct an award or resubmit it, "where the award is imperfect in mat-

---

1. Article 40 of the contract provides: "All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the American Arbitration Association, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other."

2. P.L. 381, 5 Purdon's Pa.Stat.Annot. § 161, et seq.

ter of form not affecting the merits of the controversy." [3] The court held that the Act of 1927 was applicable because the arbitration clause of the contract provided that it was to be enforceable under the "prevailing arbitration law". Appellant contends that this was error because this was a common law arbitration and that under it the court has no power to resubmit an award to arbitrators for clarification.

In Pennsylvania statutory provisions for arbitration existed as early as 1705 [4] and 1836. [5] Most of the cases on arbitration were decided under these early statutes and local rules of court. They dealt with situations arising after the institution of suit and the submission of the controversy to the decision of an arbitrator or referee, which was then reported to the court much like the verdict of a jury and to which the unsuccessful party could take exceptions. [6] There was little arbitration outside these statutes, and as a result the distinction between common law and statutory arbitration, although recognized, was not always noticed so that at times it is difficult to ascertain from some of the reports the specific nature of the proceeding.

In 1927 Pennsylvania adopted with some modifications the Uniform Arbitration Act, [7] recommended two years earlier by the Commissioners on Uniform State Laws. The Act provides in general for the enforcement of a provision in any written contract, except a contract for personal services, to settle by arbitration a controversy which may thereafter arise out of the contract and for the enforcement of an agreement in writing to submit an existing controversy to arbitration. [8] Because the Act of 1927 makes a number of changes in the earlier practice in arbitration and prescribes grounds for the vacation [9] and modification and correction [10] of awards by the court [11] it has become increasingly important to determine whether a particular arbitration proceeding is subject to the provisions of the Act of 1927 or is to be deemed a common law arbitration. The rule has been reiterated in many recent decisions that the provisions of the Act of 1927 are applicable only if the agreement specifically refers to the Act or there is other evidence justifying the conclusion that both parties agreed either expressly or impliedly that the provisions of the Act should apply. Keller v. Local 249, 423 Pa. 353, 223 A.2d 724 (1966); Wingate Construction Co. v. Schweizer Dipple, Inc., 419 Pa. 74, 213 A.2d 275 (1965); John A. Robbins Co., Inc. v. Airportels, Inc., 418 Pa. 257, 210 A.2d 896 (1965); Freeman v. Ajax Foundry Products, Inc., 398 Pa. 457, 159 A.2d 708 (1960), aff'g 20 Pa. Dist. & Co. R.2d 128 (1959); A. J.

3. 5 Purdon's Pa.Stat.Annot. § 171. Section 10(d) of the Act of 1927 is also relevant. It authorizes the court to vacate an award upon the application of any party to the arbitration and if the time within which the agreement required the award to be made has not expired, to direct a rehearing by the arbitrators, inter alia, "where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made." 5 Purdon's Pa.Stat. Annot. § 170.

4. 1 Smith's Laws 49, 5 Purdon's Pa.Stat. Annot. § 8.

5. Act of June 16, 1836, P.L. 715, 5 Purdon's Pa.Stat.Annot. § 1 et seq.

6. For the procedure under these statutes see 4 Troubat & Haly, Practice in the Civil Courts of Record in Pennsylvania (6th ed. 1915) p. 3131, et seq.

7. Act of April 25, 1927, P.L. 381, 5 Purdon's Pa.Stat.Annot. § 161, et seq.

8. Act of April 25, 1927, P.L. 381, § 1, 5 Purdon's Pa.Stat.Annot. § 161.

9. Act of April 25, 1927, P.L. 381, § 10, 5 Purdon's Pa.Stat.Annot. § 170.

10. Act of April 25, 1927, P.L. 381, § 11, 5 Purdon's Pa.Stat.Annot. § 171.

11. See Seaboard Surety Co. v. Commonwealth, 345 Pa. 147, 27 A.2d 27 (1942); Philadelphia Housing Authority v. Turner Construction Company, 343 Pa. 512, 23 A.2d 426 (1942).

Curtis & Co. v. D. W. Falls, Inc., 305 F.2d 811 (3 Cir. 1962).[12]

The present contract contains no reference to the Act of 1927, and the language of Article 40 that disputes under the contract should be arbitrated in accordance with the existing practice [13] of the American Arbitration Association does not indicate the intention of the parties that the provisions of the Act should apply. Nor does the further language that the contract "shall be specifically enforceable under the prevailing arbitration law" bring the arbitration under the Act of 1927. Indeed, in the *Robbins*, case, supra, where the Supreme Court of Pennsylvania held that the arbitration was at common law and not under the Act of 1927, the contract contained substantially identical reference to the practice of the American Institute of Architects and to the enforcement of the contract under the prevailing arbitration law.

■ Since it is clear that the Act of 1927 does not apply and that this was a common law arbitration, the question is whether in such a case the district judge had power to order the award resubmitted for clarification by the arbitrators.

■ The general principle in a common law arbitration is that the arbitrators are the final judges of both the facts and the law and their decision will not be disturbed for a mistake of fact or of law. P G Metals Co. v. Hofkin, 420 Pa. 620, 218 A.2d 238 (1966). This is one of the fundamental distinctions between common law and statutory arbitration under the Act of 1927. It is presumed that in not providing affirmatively for the application of the Act of 1927 the parties to an arbitration intend the common law principle to prevail. It is an equally fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration.[14] The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion. The continuity of judicial office and the tradition which surrounds judicial conduct is lacking in the isolated activity of an arbitrator, although even here the vast increase in the arbitration of labor disputes has created the office of the specialized professional arbitrator. This policy of finality, founded on practical considerations, is nourished by the primitive view of the solemnity of all judgments. From it, reinforced by the enormous fines which King Edward I levied to replenish his treasury on his judges for erasing or altering their records, came the ancient common law rule that a judgment, once enrolled on parchment, was unalterable even for the correction of a manifest mistake.[15]

12. The Act of 1927 is specifically made applicable, however, to all written state or municipal contracts, by § 16 of the Act. 5 Purdon's Pa.Stat.Annot. § 176. See Philadelphia Housing Authority v. Turner Construction Company, supra; Seaboard Surety Co. v. Commonwealth, supra.

13. This is evidently the meaning of the phrase "in accordance with the provisions, then obtaining, of the American Arbitration Association".

14. Morse on Arbitration and Award, p. 226, cited in Hartley v. Henderson, 189 Pa. 277, 42 A. 198 (1899).

15. Blackstone, after describing these ancient events tells us: "The severity of which proceedings seems to have alarmed the succeeding judges, that through a fear of being said to do wrong, they hesitated at doing what was right. As it was hazardous to alter a record duly made up, even from compassionate motives * * * they resolved not to touch a record any more; but held that even palpable errors, when enrolled and the term at an end, were too sacred to be rectified or called in question: and, because Britton had forbidden all criminal and clandestine alterations, to make a record speak a falsity, they conceived that they might not judicially and publicly amend it, to make it agreeable to truth. * * * *" 3 Blackstone Commentaries, *409–410.

The principle that an award once rendered is final contains its own limitation, however, and it therefore has been recognized in common law arbitration that the arbitrator can correct a mistake which is apparent on the face of his award.[16] Similarly, where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination. In such a case the arbitrator is not exposed to any greater risk of impropriety than would normally exist during the pendency of the arbitration proceedings, a risk which is inherent in the submission of disputes to nonjudicial determination. The Pennsylvania courts therefore have recognized that an arbitrator may complete a common law arbitration if the award is not complete, even over the objection of one of the parties. Thus, in Frederick v. Margwarth, 221 Pa. 418, 70 A. 797, 18 L.R.A.,N.S., 1246 (1908), plaintiff sued on an award in his favor made by an arbitrator named in a building contract. The court sustained the defense that the award was invalid because it was not coextensive with the submission, since the arbitrator had failed to pass on a number of disputed matters that had been submitted to him. Thereupon the arbitrator, on notice to the parties, went forward with the completion of his award, on which the plaintiff brought a new action. The Supreme Court of Pennsylvania rejected the defense that the arbitrator's authority ended with the making of the first award. Mr. Justice Fell said: "The rule undoubtedly is that, when an arbitrator has made and delivered his award, the special power conferred upon him ends. But an award must be final, complete, and coextensive with the terms of the submission. The arbitrator, through mistake, failed to consider and decide a part of the dispute submitted to him, and the award was invalid because incomplete. But the agreement was still in force, and it was competent for the arbitrator to finish his work by making a full and complete award. * * *" (221 Pa. at 420, 70 A. at 797). See also William C. Hamilton & Son v. Hart, 125 Pa. 142, 17 A. 226 (1889).

Where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify. The resolution of such an ambiguity is not within the policy which forbids an arbitrator to redetermine an issue which he has already decided, for there is no opportunity for redetermination on the merits of what has already been decided. Instead, the clarification of an ambiguity closely resembles the correction of a mistake apparent on the face of the award and the determination of an issue which the arbitrators had failed to decide. Thus, in the present case the arbitrators will act only to remove the cloud of doubt as to whether they considered the payment of $56,429.66 in making their award and will in no way reopen the merits of the controversy.

The remaining question is whether the court in which the arbitrators' award is offered to sustain a claim or defense may take cognizance of the dispute over its finality, and finding that its clarification would not in any way violate any policy relating to arbitration and would be within the arbitrators' power to pursue on their own motion, may resubmit it to the arbitrators for such purpose.

Where awards are made under a rule of court, the decisions in Pennsylvania sustain the power of the court to order resubmission to the same referee for the correction of an informality or even an ambiguity.[17] In Refowich v.

---

16. See Robinson-Rea Mfg. Co. v. Mellon, 139 Pa. 257, 260, 21 A. 91, 92 (1891); The First National Bank of Clarion v. Brenneman's Executors, 114 Pa. 315, 319–320, 7 A. 910, 911–912 (1886).

17. See, e. g., Kidd v. Emmett, 72 Pa. 150 (1872); Thompson v. Warder, 4 Yeates 336 (Pa.1806); Snyder's Lessee v. Hoffman, 1 Binney 43 (Pa.1803); Bowers v. Worrell, 1 Browne 170 (C.P.Phila.1810). See generally, Annotation, 104 A.L.R. 710.

Rice, 4 Pennypacker 449 (Pa.1883), the Supreme Court of Pennsylvania held that the court below could not alter the award of arbitrators based on their subsequent testimony of their intention to award full costs in a slander action, rather than the nominal costs prescribed by a colonial statute. Justice Paxson said, however, that "had the award been recommitted to the arbitrators, and amended so as to give full costs, there would have been no difficulty. But there was no action by the arbitrators as such. Their award could only be amended by themselves, acting in their official character as arbitrators, upon a recommittal of it to them by the court." (451–452). What was involved in that case apparently was not a common law arbitration, but the procedural vehicle should be as equally applicable in a common law arbitration as in a statutory one. See the dissent of Roberts, J., in P G Metals Co. v. Hofkin, supra, a common law arbitration case. It must be conceded, however, that there is a sparsity of authority on common law arbitration. Most of the decisions in Pennsylvania deal with statutory arbitration under the old statutes of 1705 and 1836 and with references under rules of court. While the distinction between common law and statutory arbitration in Pennsylvania must be maintained, this is no indication that Pennsylvania intends that the common law of arbitration

should be frozen as it was prior to 1836 and that the common law is to be deprived of its traditional capacity for development and growth.[18] Indeed, there is no reason why we may not look to Pennsylvania's statutes, which explicitly permit resubmission of an award,[19] for their reflection of a public policy on which courts may properly draw in administering the gradualist development of the common law. If the common law of arbitration should be fixed as it was a century or more ago and incapable of growth, the increasing body of arbitrations on commercial contracts and on construction contracts like the one before us, establishing arbitration under the auspices of the American Arbitration Association, would be condemned to stagnation, beyond the reach of progressive judicial development. The same consequence would be imposed but for the federal reach in the area of arbitration of labor disputes under collective bargaining agreements which has vastly expanded since the Supreme Court of the United States in the *Steelworkers' Trilogy*[20] emphatically announced that arbitration of labor disputes was to be preferred over formal decisions by the courts.[21] In labor arbitration the power of a court to resubmit an award to arbitrators for clarification of an ambiguity is now well-settled.[22] It would indeed be

18. Even in the statutory field there have been developments outside Pennsylvania. The Uniform Act which Pennsylvania substantially adopted in 1927 was withdrawn by the Conference of Commissioners on Uniform State Laws in 1943 and a new Uniform Arbitration Act was approved by the Conference and the American Bar Association in 1955. It has not been adopted in Pennsylvania.

19. Act of April 25, 1927, P.L. 381, §§ 10, 11, 5 Purdon's Pa.Stat.Annot. §§ 170, 171, mentioned in Footnote 3 and accompanying text, supra. See also Act of June 16, 1836, P.L. 715, § 7, 5 Purdon's Pa.Stat.Annot. § 7, permitting a reference back to the referees if there had been a mistake in fact or law.

20. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S.

593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America AFL-CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). See also L. O. Koven & Brother, Inc. v. Local Union No. 5767, United Steelworkers of America, AFL–CIO, 381 F.2d 196 (3 Cir. 1967).

21. See Jalet, Judicial Review of Arbitration: The Judicial Attitude, 45 Corn.L.Q. 519 (1960); Comment, 114 U.Pa.L.Rev. 1050 (1966).

22. E. g., International Association of Machinists, AFL-CIO v. Crown Cork & Seal Co., Inc., 300 F.2d 127 (3 Cir. 1962); Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding

incongruous if the parties to a collective bargaining agreement should be entitled to such relief although they do not contract for the application of the Act of 1927, simply because such a case falls within the federal power, while parties to other contracts should be denied such remedy in Pennsylvania courts or in federal courts administering Pennsylvania law. Moreover, it would be strange if a court which finds an ambiguity in an award should be powerless to order its resubmission to the arbitrators although the arbitrators themselves admittedly have the authority to clarify the ambiguity and if necessary to complete their action under the submission.

Noonan does not complain and is satisfied with the resubmission to the arbitrators, although on the record before us, absent any ambiguity or need for clarification, the payment made during the pendency of the arbitration proceedings would be deemed to have been considered by the arbitrators and the ultimate award therefore would be deemed to have been in addition to the payment made. This, of course, would have been fatal to La Vale's present claim against Noonan. On the record there is the demand for arbitration and the award in favor of Noonan in the amount of $30,861.64 "in full settlement of all claims submitted to this arbitration one against the other." To this is added the supplementary information contained in the affidavits presented on the motion for summary judgment which includes a copy of a letter from the American Arbitration Association to the parties on the day the payment of $56,429.66 was made, reciting that at that time "a partial settlement" was made and a continuance granted so that the parties in the interim might attempt to settle "the remainder of the disputed figure." Any claim that the award had disposed of the payment of $56,429.66 would therefore more appropriately come from Noonan. See P G Metals Co. v. Hofkin, supra. We are not now asked, however, to enforce the arbitrators' award. The question which is presented to us is whether the district court had power to order the award resubmitted to the arbitrators for clarification of the controversy as to the effect of the award on the payment of $56,429.66. Noonan, the only party who could properly complain, does not object to the resubmission and we reject appellant's contention that the district court had no power to enter the order.

■ A final matter must be considered. The award in favor of Noonan ran jointly against La Vale and one Tuttle, its president. Tuttle, who is not a party to the proceedings in this case, is a resident of New York and is outside the jurisdiction of the court. In our opinion the order of the district court remanding the award to the arbitrators did not require Tuttle's presence as an indispensable party under Rule 19. The court below made no order against him. He has already appeared as a party in the arbitration proceedings and if he has any rights which may be affected there he may, of course, protect them there. The decision of the court below in effect has merely called upon the arbitrators to complete their determination of the controversy in which he has already appeared as a party.

The order of the district court will be affirmed.

Workers of America, Local 15, A.F.L.-C.I.O., 242 F.Supp. 606, 611–612 (D.N.J. 1965); Transport Workers Union of Phila., A.F.L.-C.I.O., Local 234 v. Philadelphia Transportation Co., 228 F.Supp. 423, 425–426 (E.D.Pa.1964). See also United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358 (1960); United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 433, n. 10, 86 S.Ct. 1539, 16 L.Ed. 2d 662 (1966).