PAPERHANDLERS UNION NO. 1, INTERNATIONAL PRINTING PRESSMEN & ASSISTANTS UNION, AFL–CIO, Plaintiff,

v.

U.S. TRUCKING CORPORATION, Defendant.

No. 73 Civ. 2866 (CBM).

United States District Court,
S. D. New York.

Sept. 14, 1977.

---

Doran, Colleran, O'Hara, Pollio & Dunne, P. C. by Thomas J. Lilly, New York City, for plaintiff.

Zelby, Burstein, Bernstein & Hartman by Herbert Burstein, New York City, for defendant.

MEMORANDUM OPINION

MOTLEY, District Judge.

In this action under the Labor Management Relations Act of 1947, as amended, 29

U.S.C. § 185, the court is being asked for the third time to grant summary judgment for plaintiff, this time vacating an Arbitrator's award and remanding the matter to the Arbitrator for further proceedings. Specifically, plaintiff asks that the Arbitrator be directed to clarify the set-off provision of his original award dated February 27, 1973 and indicate what specific monetary amounts, if any, are due and owing its members. For the reasons which follow, the motion for summary judgment is granted.

 Federal labor law embraces the policy of finality in labor disputes. L.M. R.A. §§ 201, 203(d), 29 U.S.C. §§ 171, 173(d). One of the specific functions of arbitration is to settle disputes between employer and employee amicably and quickly without extensive judicial intervention. When courts have been called upon to review labor arbitration awards, they have promoted this need for finality. *See e. g., United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "[R]epetitive submission . . . of the same grievance" has been found to jeopardize the "harmony sought by arbitration." *Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers of America, Local 15, AFL–CIO,* 242 F.Supp. 606, 611 (D.N.J.1965). *See also Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 143 U.S. App.D.C. 210, 442 F.2d 1234, 1238 (1971).

Harmony has certainly not been achieved in the case at bar. This dispute has been before both the Arbitrator and the court three times since 1973. That such a protraction of the dispute is contrary to the finality sought in labor arbitration is obvious. This court will therefore attempt to resolve the issues before it once again, so as

to effectuate federal policy and relieve the parties of any further need to seek judicial clarification of their rights and obligations. In order to do so, a full description of the facts and the arbitral and judicial history is required.

## FACTS

Pursuant to the arbitration provision of a collective bargaining agreement between the union (Paperhandlers Union No. 1, International Printing Pressmen & Assistants Union, AFL–CIO) (Plaintiff) and employer (U.S. Trucking Corporation) (Defendant), a dispute concerning entitlement to severance pay for certain members of Plaintiff union was referred to an Arbitrator designated by the American Arbitration Association. The pertinent arbitration provision reads as follows:

> *Section 29.* In case of a disagreement between the Employer and the Union regarding the interpretation or application of the terms of this agreement which cannot be settled amicably . . . there shall be an impartial person acceptable to the Union and the Employer . . whose decision shall be final and binding upon all parties to this agreement.

Section 23 of the collective bargaining agreement controlled entitlement to severance pay:

> In the event of merger, consolidation, or permanent suspension of the employer covered by this Agreement, all *regular situation holders* with one year or more service as *regular situation holders* who by virtue of the merger, consolidation or permanent suspension are deprived of regular situations, shall receive the cash equivalent of eight weeks' (40) shifts pay at their current rate in addition to any accumulated vacation credits or any other money due them. (emphasis supplied).

The subject employees were employed by Defendant at Pier 46, New York City. When the pier was destroyed by fire in July of 1972, Defendant suspended operations,[1]

---

1. One of Defendant's early contentions was that the suspension was not permanent and

that the subject employees were therefore not covered by § 23. Such suspension did, how-

and the dispute as to severance pay was referred to the Arbitrator. His findings of fact included (1) that five[2] subject employees had worked for the employer at least one year; (2) that therefore the employer was liable under § 23; and (3) that if they were deprived of regular situations as a result of the suspension, they were entitled to receive up to eight weeks' severance pay.

The Arbitrator's award, rendered February 27, 1973, granted the five employees the relief sought, subject to a set-off provision to the extent they had earnings during the "eight weeks after cessation of their jobs . . . if working at *regular situations* at other jobs." (emphasis supplied). Defendant refused to pay, asserting that the employees were not entitled to any severance pay because they had earnings during the eight weeks following cessation of operations.[3] Plaintiff's contention was that since they had worked only as "casuals" rather than at "regular situations" during that time, they were entitled to payment.

On Plaintiff's motion, this court, on January 21, 1974, ordered a remand to the Arbitrator for clarification of the set-off provision. In its Memorandum Opinion and Order, the court stated that "there are no genuine issues of material facts. The only legal issue is whether or not the set-off provision of the Arbitrator's Award . . . is in need of clarification. The court finds the phrase 'regular situations' as used in the award ambiguous."

On remand, after a full hearing between the parties, the Arbitrator's Clarification of Award, dated July 24, 1974, confirmed his original award and defined "regular situation holders" as synonymous with "Regular Paper Handlers",[4] i. e., as "permanent employees, who worked 160 or more shifts in the industry in the previous year and are on a regular seniority list, and are not casual employee [sic]." The Arbitrator further clarified the set-off provision, per order of the court, as follows:

2. In order for the set-off provisions to apply the employees involved had to find *permanent* employment, and not work as *casuals* or *shape up* employees. (emphasis supplied).

When Defendant again refused to pay, on the same grounds previously advanced, Plaintiff again moved to confirm the award, or, alternatively, to remand to the Arbitrator for further clarification. This court's order of January 17, 1975, reads in pertinent part as follows:

Insofar as the parties are unsure as to what their obligations under the clarified award are, the award is remanded to the Arbitrator for further clarification. In particular, the clarified award should indicate what specific monetary amounts, if any, are due and owing the employees.

On this second remand, after a hearing on July 2, 1975, the Arbitrator completely reversed his original decision on October 20, 1975, determining that the subject employ-

---

ever, become permanent, and this question is not in issue before the court.

2. The question of entitlement to severance pay concerned six employees. In the Arbitrator's findings of fact and award, the employer was found liable to only five of the six employees. There is no dispute as to the findings relative to this sixth employee.

3. As indicated *infra*, it is important to note that this was Defendant's sole basis for its refusal to pay. In its Affidavit in Opposition to Plaintiff's original motion for summary judgment and remand order to the Arbitrator for clarification, Defendant asserted that ". . . the Award is *final, definite* and *binding*. The Arbitrator is *functus ex officio* and has no power to modify the Award." Affidavit of Arthur Liberstein, filed December 3, 1973, p. 6 (emphasis supplied). Defendant's Memorandum of Law

accompanying said affidavit fully supports its contention. Defendant states at p. 3 therein, "It is respectfully submitted that the Award is patently clear, unambiguous and that this Court should not refer the matter back to the Arbitrator for further hearing." *See also* note 10, *infra*, and accompanying text.

4. The collective bargaining agreement defines a regular Paper Handler as "one who [sic] name appears on a Publisher's priority list or Industry-wide list. All others are considered casuals. A casual may become a regular Paper Handlers [sic] by working 160 or more shifts in the industry in the previous calendar year." Nowhere in the collective bargaining agreement is the term "regular situation holder" defined.

ees were not covered by § 23 and that therefore Defendant was not liable in the first instance for any severance pay. This reversal was based upon what he perceived to be his error in equating a "regular situation holder" with a "regular Paper Handler." Finding that the employees had not sufficiently established their status as regular situation holders in their employ with Defendant, the Arbitrator felt justified in vacating and reversing his original award.

## ISSUES

The primary issues on this motion are (1) whether the original award was a *final* award and (2) whether the final character of that award precluded the Arbitrator from subsequently reversing his decision when this court remanded the award for a limited clarification. A subsidiary issue is whether this dispute is governed by federal law or whether it is to be determined by reference to the New York Arbitration Act (Article 75 of the N.Y.C.P.L.R.), under which Defendant now contends the original award was not final.

## I

Before turning to the issue of finality of arbitration awards, the choice of law question must be determined. Defendant's contention that New York Civil Practice Law & Rules controls is not well-founded. It has long been established that the substantive law to be applied in labor disputes within the purview of the L.M.R.A. is federal law "which the courts must fashion from the policy of our national labor laws." *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Not only does federal law gov-

ern, but federal interpretation of that law is controlling, rather than state interpretation. Id. at 457, 77 S.Ct. 912.

When Defendant asserts that *Lincoln Mills* stands for the proposition that federal courts may "draw upon" state law, he neglects to include its proviso that such state law must be compatible with federal law, and that resort tò it is for the purpose of effectuating federal policy. *Lincoln Mills, supra,* at 457, 77 S.Ct. 912; *see also Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 951 (2d Cir. 1964). Even when state courts properly assume jurisdiction, it has been held that incompatible doctrines of local law must give way to principles of federal labor law. *Local 174, Teamsters Union v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

It is clear that federal policy and federal law govern this dispute. However, as the discussion below makes clear, federal law and New York law concerning enforcement (and vacation) of arbitral awards are generally congruent, and would lead to the same result in this case.

## II

Defendant asserts that the arbitrator's original award of February 27, 1973, was not a final award and that consequently it was subject to vacatur pursuant to N.Y.C.P. L.R. § 7511(b)(1)(iii).[5] Since we have found that the proper law to follow is federal law, we will first discuss the question of finality of the original award under application of the federal statute.[6]

As indicated above, national labor policy favors finality of arbitration awards.

---

5. The pertinent section reads as follows:

(b) Grounds for vacating.

1. The award shall be vacated on the application of a party . . . if the court finds that the rights of that party were prejudiced by:

(iii) an arbitrator . . . making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made. N.Y.C.P.L.R. § 7511(b)(1)(iii) (McKinney 1963).

6. The comparable federal provision appears in 9 U.S.C. § 10(d) (1947):

[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Todd, supra.* Toward that end, decisions of the arbitrator are considered final and binding both as to questions of fact and law unless the award has been obtained through corruption, fraud, or other misconduct.[7] *American Machine & Foundry Co. v. United Automobile, Aerospace & Agricultural Implement Workers of America, UAW, AFL–CIO, Local 116,* 256 F.Supp. 161, 163 (S.D.N.Y.1963), aff'd, 329 F.2d 147 (2d Cir. 1964); *Grant v. Atlas Powder Co.,* 241 F.2d 715, 716 (6th Cir. 1957); *Washington-Baltimore, supra* at 1239. An examination of New York case law reveals the same approach to the effect to be given an arbitration award. *Matter of City of Troy (Village of Menands),* 48 A.D.2d 733, 367 N.Y.S.2d 872, 873 (1975); *Matter of Mole (Queen Insurance Co.),* 14 A.D.2d 1, 217 N.Y.S.2d 330, 333 (1961); *Matter of Big-W Construction Corp. (Horowitz),* 24 Misc.2d 145, 192 N.Y.S.2d 721 (1959), aff'd, 14 A.D.2d 817, 218 N.Y.S.2d 530 (1961). This is true even though the arbitrator has committed an error of fact or law. *Washington-Baltimore, supra* at 1239; *American Machine & Foundry, supra* at 163; *Local 453 International Union of Electrical Radio and Machine Workers v. Otis Elevator Co.,* 314 F.2d 25 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963). New York case law conforms to this view as well. *City of Troy, supra,* 367 N.Y.S.2d at 873; *Matter of Decicco (Viviana),* 32 A.D.2d 541, 299 N.Y.S.2d 769 (1969); *Big-W, supra,* 192 N.Y.S.2d at 732, 733; *First National Oil Corp. (Arietta),* 2 Misc.2d 225, 151 N.Y.S.2d 309, 315–16 aff'd, 2 A.D.2d 590, 157 N.Y.S.2d 313 (1956).

▮ Arbitration awards are, however, capable of remand to the arbitrator by the courts for clarification and interpretation. *See United Steelworkers of America v. American Manufacturing Co., supra; United Steelworkers of America v. Warrior & Gulf Navigation Co., supra; United Steelworkers of America v. Enterprise Wheel & Car Corp., supra.* On such remand, the arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear and redetermine those matters not in question. As the court stated in *Washington-Baltimore, supra,* at 1238, "[a]rbitrators are not and never were intended to be amenable to the 'remand' of a case for 'retrial' in the same way as a trial judge." See, e. g., *Electrical Specialty Co. v. Local 1069, International Brotherhood of Electrical Workers, AFL–CIO,* 222 F.Supp. 314, 315–16 (D.Conn.1963). Although Defendant cites many cases in both federal and state courts to indicate that the Arbitrator was free to reopen the entire hearing, we find these same cases fully supportive of the proposition that the arbitrator's powers on remand are limited to the clarification mandated by the court.

In *La Vale Plaza, Inc. v. R. S. Noonan, Inc.,* 378 F.2d 569 (3rd Cir. 1967), the court remanded to the arbitrator for redetermination of an issue he had already decided. Defendant contends that this indicates that the award was not final, and that a hearing *de novo* was proper. In his brief, Defendant quotes that court as follows:

> Where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify. The resolution of such an ambiguity is not within the policy which forbids an arbitrator to redetermine an issue which he has already decided, for there is no opportunity for redetermination on the merits of what has already been decided. Instead, the clarification of an ambiguity closely resembles the correction of a mistake apparent on the face of the award and the determination of an issue which the arbitrators had failed to decide.

378 F.2d at 573. Defendant, however, fails to note that the issue before that court, and the subject of the remand order, was a clarification of an ambiguity within the award, and not a new hearing on the merits. Indeed, had Defendant completed the quotation, he would have noted:

> Thus, in the present case the arbitrators will act *only* to remove the cloud of doubt

---

7. No such allegations are made here.

as to whether they considered the payment of $56,429.66 in making their award and *will in no way reopen the merits of the controversy.*

Id. at 573 (emphasis supplied).

Similarly, in *Matter of Ace Mechanical Contractors, Inc. (Gevyn Construction Corp.)*, 33 Misc.2d 338, 225 N.Y.S.2d 151, 153 (1962), remand to the arbitrator was permitted "for the limited purpose of clarifying" the *manner* of the discharge of petitioner's liability. The court in *Matter of Jolson (Forest Laboratories, Inc.)*, 15 A.D.2d 901, 225 N.Y.S.2d 596, 597 (1962), remanded an award for clarification of unclear accounting and computation *methods* only.

Defendant further alleges that additional evidence is permissible at hearings remanded to the arbitrator. In support of his contention, he relies principally on two New York cases, *Trophy Handbags v. Craft Industrial Case Corp.*, 156 N.Y.S.2d 45 (Sup. Ct.N.Y.Co.1956), *aff'd*, 3 A.D.2d 733, 160 N.Y.S.2d 820 (1957), and *Matter of Livingston (Banff, Ltd.)*, 13 Misc.2d 766, 178 N.Y.S.2d 973 (1958). While the *Trophy Handbag* case did indeed allow the arbitrator to receive additional evidence, such evidence was limited to the specific matter submitted for clarification; the court did not contemplate that the Arbitrator would again delve into issues which he had previously determined and which were not subject to clarification. Although the opinion in the *Livingston* case is ambiguous in its brevity, it *also* appears to rule that the Arbitrator's freedom to receive new evidence on remand is confined primarily to his consideration of the new (and correct) contract between the parties. To the extent, however, that the court appears to have given greater liberty to the Arbitrator to receive new evidence and reexamine the merits of his prior decision, that case is inconsistent with federal law and not binding on this court. Moreover it appears inconsistent with some of the New York cases. *See, e. g., Matter of Mole, supra* (where newly discovered evidence did not justify the vacating of an award).

Within the federal courts, decisions permitting or ordering remands to arbitrators have carefully circumscribed the issues to be represented to the arbitrators for clarification or further consideration and have not given the arbitrators *carte blanche* to redetermine the merits of their prior decisions. Thus, for example, in *Local Union No. 494, International Brotherhood of Electrical Workers, AFL–CIO v. Brewery Proprietors*, 289 F.Supp. 865, 870 (E.D.Wisc. 1968), remand was effected to determine the *method* by which a benefit increase was to be computed. The limited purpose of determining the exact amount of back pay due the employee pursuant to a set-off provision was the subject of remand in *Electric Specialty Co., supra*. Even where new testimony is uncovered which, if presented at the original hearing, would have resulted in a different award, it has been consistently held that this is not sufficient ground for vitiating the required finality of the original award. Thus, in *Bridgeport Rolling Mills Co. v. Brown*, 314 F.2d 885, 885–86 (2d Cir.), *cert. denied*, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963) the court stated:

> That the employer . . . may have had, or may now have, sufficient evidence to justify [a different result] is irrelevant to the issues the arbitrator heard and has no bearing upon the arbitrator's determination . . .
>
> . . . . .
>
> [P]arties, having agreed to an arbitration of their differences, are bound by the arbitration award made upon the testimony before the arbitrator.

Even assuming that the Arbitrator made an error of fact in his original award as to the status of the employees, this would not be a valid basis for vacating the award. Errors of fact (or of law) are not within either federal or state statutory grounds for vacating an award. As indicated *supra*, the statutes are consistently interpreted, in both federal and state courts, to allow such discretion to the arbitrator.

Indeed, the New York case of *Matter of Mole, supra*, is most explicit as to the purpose of arbitration and the finality of the

arbitrator's award. As that court stated, consistently with federal policy:

> The principal purpose of arbitration is to reach a speedy and final result and to avoid protracted litigation . . . The arbitration award is final, subject only to the provisions for vacating the award specified in [the statute]. If a motion to reopen the proceeding . . . could be entertained, the arbitration award would be the beginning rather than the end of the controversy and the protracted litigation which arbitration is meant to avoid would be invited.

> The plight of a litigant who discovers new and important evidence after an adverse arbitration award has been handed down, may be an unfortunate one, but that is one of the risks which he assumed in submitting the controversy to arbitration. In exchange for speed and finality, the parties to an arbitration submission surrender the safeguards which surround the disposition of controversies by conventional trial in the courts.

217 N.Y.S.2d at 332–33.

Further, the New York case of *Matter of Wolff & Munier (Diesel Construction Co.)*, 41 A.D.2d 618, 340 N.Y.S.2d 455, 457 (App. Div. 1st Dept. 1973) specifically refused to enforce an arbitration award which "expressly changed the substance of their original determination," stating that the "arbitrators were *functus officio* except for the purpose of [correcting] a deficiency of form or a miscalculation of figures or to eliminate matter not submitted. C.P.L.R. 7509, 7511(c)."[8] We find this to be consistent with federal policy, and wholly dispositive of the case before us.

## APPLICATION TO THE CASE AT BAR

In the instant case, the original award and subsequent confirmation thereof for Plaintiff was based on the arbitrator's finding that the five employees were covered by § 23 of the collective bargaining agreement by virtue of their employment with Defendant. Although remanded twice for specific clarification of the set-off provision only, on the third hearing the arbitrator, over Plaintiff's objection, allowed additional testimony by Defendant as to the status of the employees while in Defendant's employ. Now addressing himself to information that the employees were not "regular situation holders" while working for Defendant, the Arbitrator found that they therefore did not come under § 23's requirement that "regular situation holders" are entitled to severance pay.

■ Although clarification of the term "regular situations" was mandated by the court order of January 21, 1974, the order for clarification was limited to the use of the phrase in the set-off provision as it related solely to work subsequent to the suspension, and not at all to its use in terms of the employees' status with Defendant. This is clear from the order of the court itself, which stated that "[t]he only legal issue is whether or not the set-off provision . . . is in need of clarification." Toward that end only, the term "regular situations" was to be clarified. The court's *second* remand for further clarification—the one at issue herein—similarly addressed itself only to the *amount* of the set-off. While the remand order did direct a finding as to "what specific monetary amounts, *if any*, [were] due and owing the employees" (emphasis supplied), the court was not thereby inviting the Arbitrator to reexamine the merits of the dispute or the meaning of "regular situation holders" (which had been the subject of the first remand), but was rather directing merely that the Arbitrator make an arithmetic computation. From the court's perspective in ordering the remand, that computation might well have resulted in an award of no pay to the employees, if it were determined that the set-off was equal to the award of eight weeks' pay. Thus, it was only for the purpose of

---

8. The court also found that the original award should not have been confirmed, but did so on grounds not relevant to the case at bar. There, the original award did not settle the dispute, but referred the parties to the terms of the contract which itself had created the dispute between them.

indicating that the court had no view concerning the appropriate amount of the set-off that the phrase "if any" was included in the remand order.

It is thus apparent that the arbitration award rendered initially on February 27, 1973 was a final and definite award on the merits[9] regardless of error, if any, made by the Arbitrator as to the status of the employees while in the employ of Defendant. The fact that clarification was required to remove an ambiguity which had arisen in the parties' interpretation of the award does not destroy the "final" character of that award, which had dealt with all the matters under submission. Were that not the case, every arbitral award resubmitted to its author for clarification would, *ipso facto*, be deemed to be less than a "final" award and therefore subject to reexamination and reversal on the merits. In other words, there would be no such thing as a "limited" remand. Such is clearly not the law.

The court's conclusion that the award was a "final" one is buttressed by Defendant's own assertions at the time of Plaintiff's first motion that the Arbitrator's original award was final and binding; that the Arbitrator was *functus officio*; and that the only issue was as to the amount of the set-off.[10] Defendant's Affidavit, December 3, 1973, and supporting Memorandum of Law. *See also* footnote 3 *supra*. Defendant's original position was correct, despite its latest assertion that it had originally "contended that the Arbitrator's award was ambiguous and required clarification." Defendant's Affidavit, dated February 19, 1976.

The Arbitration Award of October 20, 1975 is hereby vacated. The original award of February 27, 1973, and clarification of the set-off provision dated July 24, 1974, are confirmed, subject only to final clarifi-

cation of the dollar amount of the set-off. This matter is thus remanded to the arbitrator to specifically clarify only the following:

1. Whether the five employees had earnings during the eight week period subsequent to their permanent suspension from Defendant's employ;

2. Whether such earnings, if any, were derived from permanent employment, or from employment as "casuals" or "shape up" employees, as these terms are known in the trade;

3. The specific dollar amounts, if any, attributable to each type of employment;

4. The dollar amount of the earnings, if any, from permanent employment only, to be set off against the eight weeks' severance pay due the five employees.

This direction is consistent with the findings of fact of the award of February 27, 1973, and the clarification of the set-off provisions of that award dated July 24, 1974.

---

**9.** This is particularly mandated by the language of the collective bargaining agreement itself, whose § 29 specifically calls for the "final and binding" decision of the arbitrator. See also *Todd, supra* at 611.

**10.** Defendant "has been prepared to compensate the five employees in accordance with the provisions of the Arbitrator's Award, upon

proof that the employees did not have any earnings during this eight week period." Affidavit of Arthur Liberstein, December 3, 1973, at pp. 5–6. The only issue, in Defendant's mind, was the nature of the proof relative to the earnings of the employees subsequent to their suspension from Defendant's employ. *Id.*