**In the Matter of the Arbitration Between LLT INTERNATIONAL INC., F/K/A Lee, Liu & Tong Advertising, Inc., Petitioner,**

v.

**MCI TELECOMMUNICATIONS CORPORATION S/H/A MCI Telecommunications, Inc., Respondent.**

No. 98 Civ. 2933(RWS).

United States District Court, S.D. New York.

Oct. 7, 1999.

Mintz & Gold, New York City,(Philip Raible, of counsel), Law Offices of Paul J. Ruskin, Douglaston, NY (Paul J. Ruskin, of counsel), for petitioner.

Piper & Marbury, New York City (Joseph G. Finnerty, III, Eric S. Connuck, of counsel), for respondent.

## OPINION

SWEET, District Judge.

Once again petitioner LLT International Inc., F/K/A Lee, Liu & Tong Advertising, Inc. ("LLT") has moved to vacate an arbitration award (the "Award" or the "Second Award"), rendered this time on March 29, 1999, in the continued arbitration between it and respondent MCI Telecommunications Corporation, S/H/A MCI Telecommunications, Inc. ("MCI"). MCI has cross-moved to confirm the Award. For the reasons set forth below, LLT's motion is

denied, the cross motion of MCI is granted, and the Award confirmed.

### Prior Proceedings

An arbitration between the parties was conducted pursuant to their agreement of July 6, 1994 (the "Agreement"), under which LLT was retained by MCI as an advertising and marketing consultant to assist MCI in its efforts to market its services to the Asian–American community. MCI terminated the Agreement, claiming defective and fraudulent performance by LLT. LLT claimed, *inter alia,* wrongful termination, and sought payment of unpaid invoices and damages for termination.

The dispute between the parties was arbitrated in Washington, D.C., with fourteen days of hearings, thirteen fact witnesses, thousands of pages of documentary evidence, two expert witnesses, seven fully-briefed motions, two post-hearing memoranda from the parties, and a day of closing arguments. An award was issued on November 19, 1997 (the "First Award") leaving the parties, financially, where they were. The Award was vacated in an opinion of this Court, dated September 24, 1998, familiarity with which is assumed. *See LLT Int'l v. MCI Telecommunications,* 18 F.Supp.2d 349 (S.D.N.Y.1998) ("*LLT I* "). On remand, no additional evidence was presented, and the arbitration panel (the "Panel") conducted a hearing on January 22, 1999.

On March 29, 1999, the Panel rendered the Second Award, stating that MCI and LLT each bore the burden of proving all the elements of their respective claims and counterclaims, and that neither party had sustained that burden.[1] As a result, the Panel determined, once again, to "leave the parties where they found them financially."

More specifically, the Panel found that: [M]CI *did* sustain its burden of proving (a) that LLT materially breached the

Agreement by failing to perform its contractual obligations and to submit proper invoices in accordance with the terms of the Agreement, (b) that LLT's improper practices in breach of the Agreement were pervasive and resulted in substantial overcharges to MCI, (c) that LLT's improper practices were concealed from MCI and were not discovered by MCI until the summer of 1996, (d) that MCI had good cause for terminating the Agreement, and (e) that MCI's termination notice to LLT dated July 26, 1996 was valid.

[M]CI *did not* sustain its burden of proving (a) that LLT's improper performance, billing practices, or overcharges constitute fraud, and (b) that MCI is entitled to recover any amount from LLT in excess of the amount that MCI owed to LLT.

[L]LT *did not* sustain its burden of proof with respect to all elements of any of its counterclaims. . . .

The Second Award also concluded that "the law of account stated does not relieve LLT of the burden of proving its counterclaims," and that the doctrine of *functus officio* did not preclude the Panel from reaching its conclusions concerning the parties' satisfaction of their respective burdens. The Second Award's denial of LLT's counterclaims indicated that LLT had not sustained its burden of proving, among other things, "[t]hat LLT fully and properly performed its obligations under the Agreement" or "[t]hat LLT properly billed for its services in accordance with the terms of the Agreement."

LLT moved to vacate the Second Award, MCI moved to confirm it, and both motions were marked fully submitted on June 30, 1999.

---

1. The Second Award specifically provides that "[n]either party having sustained its burden of proving all the elements of any of its claims or counterclaims or that it is entitled to an award for any amount from the other party, therefore it is the Panel's decision to leave MCI and LLT where they found them financially."

*Discussion*

## I. *The Standard for Vacatur of an Arbitral Award*

 As set forth in *LLT I*, "[t]he grounds for vacating awards are narrow":

[C]ourts have consistently held that " 'arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' " ... Moreover, the burden is on the party seeking to vacate the award to establish one of the statutory grounds for that relief. Thus, the Second Circuit "adhere[s] firmly to the proposition [ ] ... that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.' "

18 F.Supp.2d at 352 (citations omitted). Accordingly, a party seeking to vacate an arbitration award bears a heavy burden of proof. *See Warnes, S.A. v. Harvic Int'l., Ltd.,* No. 92 Civ. 5515(RWS), 1995 WL 261522, at *3 (S.D.N.Y. May 4, 1995) ("Any 'colorable justification' will support an arbitral award.") (citation omitted).

## II. *The Second Award Complies With LLT I, and Does Not Violate the Doctrine of Functus Officio*

LLT has challenged the Second Award, contending that the Panel exceeded its authority in issuing the Second Award. More specifically, LLT posits that (1) the scope of the Panel's jurisdiction on remand was limited by this Court to consideration of LLT's purported damages, and the Second Award's treatment of the parties' claims therefore exceeded the scope of that remand; (2) the Second Award violates the doctrine of *functus officio* because it is inconsistent with the vacated award, and reconsiders matters that were not unsettled by *LLT I*; and (3) the panel incorrectly assigned burdens of proof. These challenges fail to satisfy the grounds for vacatur set forth in the *LLT I*: corruption, fraud, evident partiality, misconduct, action in excess of the Panel's powers, imperfect execution, or manifest disregard of the law.

In *LLT I*, the First Award was vacated because of an internal inconsistency. The First Award held that MCI had "not sustained its burden of proof with respect to any of its claims," that the same was the case insofar as LLT's claims were concerned, and that, as a result, all claims would be denied and neither party would be entitled to recovery.

However, because the parties' claims concerned a contract, and the positions taken during the arbitration were "mirror images of claims which arose out of the contract," *LLT I*, 18 F.Supp.2d at 352, the Court in *LLT I* was presented with a conceptual difficulty:

If neither side prevailed on their respective contentions concerning the contract, then all that was established is that the contract remained in effect until July 1996. In the absence of proof of MCI's claim, there can be no offsets, and therefore the monthly retainer payments of $20,000 a month from the first of the year 1996 were required to be paid.

18 F.Supp.2d at 352. Moreover, it was observed in *LLT I* that because Paragraph 2.2.6 of the Agreement contemplated that LLT would render monthly invoices to be paid by MCI within 30 days, and the Panel's findings did not contain any particularized indication that the Agreement was properly terminated, there would be no basis under the First Award to suspend the operation of that paragraph.

LLT has characterized the Second Award as a wholesale reconsideration of the Panel's First Award that exceeds both the scope of this Court's remand and the doctrine of *functus officio*. Ostensibly relying on *LLT I*, LLT has also contended that the Panel was obligated on remand to apply Paragraph 2.2.6 of the Agreement. In response, MCI has pressed that *LLT I*'s complete vacatur of the First Award specifically allowed for such a wholesale reconsideration, and that the matters resolved by the Panel were therefore not

*functus officio.* For a variety of reasons, LLT's position is unpersuasive and reflects a misreading of this Court's prior Opinion.

The First Award was vacated because, under its finding that neither MCI nor LLT had carried their respective burdens, the Court was unable to discern grounds for suspension of the Agreement's payment provisions. In light of this general finding, the Panel's conclusion that the parties would be left where they were appeared to contradict the Agreement's explicit requirements. Paragraph 2.2.6 was identified as an example of an explicit contractual obligation that would presumably remain binding without some actual finding that MCI was relieved from its obligation to perform.

*LLT I* did not, however, hold that the Panel was only to apply Paragraph 2.2.6 upon remand, or that the remand was to be limited to the issue of LLT's rights to performance under the Agreement. Rather, that decision merely indicated that the First Award appeared inconsistent in its simultaneous finding that (1) the parties had failed to carry their respective burdens, and (2) that the parties would be left where they were. Indeed, the scope of the remand was never limited in the manner that LLT suggests. As *LLT I* stated:

> As MCI and LLT's claims are not separate and independent such that it would be permissible to affirm any part of the decision rendered by the arbitrators while remanding any other part, the remand will encompass the claims of both parties.

18 F.Supp.2d at 354 (emphasis added). Furthermore, it was noted in *LLT I* that the First Award's broad language could be interpreted to mean simply that "there was a failure of proof as to the amount of any damages," though the Court was unwilling to take it upon itself to so interpret the language of the award.

A review of the Second Award reveals that it, too, ultimately concludes that the parties failed to carry their respective burdens. However, unlike the First Award, the Panel has provided enough of an expla-nation for those failures to justify an outcome that does not require the Agreement to be applied. For example, while MCI is found to have failed to sustain its burden of proving that LLT's improper billing performance, billing practices, or over-charges constituted fraud, as well as its ultimate burden of proving that it is enti-tled to recover any amount from LLT in excess of the amount owed to LLT, the Second Award notes that MCI sustained its burden of demonstrating breach, im-proper practices and overcharges, and both good cause for—and valid notice of—termination. Such an outcome ultimately allows MCI to avoid its obligations under the Agreement without being able to re-cover on its claims against LLT.

The Second Award simply provides an itemized breakdown of the various burdens met (and not met) in coming to a conclu-sion set forth in the First Award that both parties' claims should be denied.

■■■■ LLT has urged the application of the doctrine of *functus officio* to require vacation of the Second Award. The Latin term *"functus officio"* literally means "task performed." *See* Daniel C. Tepstein, *Confirming an Amended Labor Arbitration Award in Federal Court: The Problem of Functus Officio*, 8 Am.Rev. Int'l Arb. 65, 66 (1997). As the Ninth Circuit has de-scribed this common law doctrine, " 'once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration.' " *International Bhd. of Teamsters v. Silver State Disposal Serv., Inc.,* 109 F.3d 1409, 1411 (9th Cir.1997) (*quoting McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir.1982)); *see also Trade & Transport, Inc. v. Natural Petro-leum Charterers Inc.,* 931 F.2d 191, 195 (2d Cir.1991); *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987); *A/S Siljestad v. Hideca Trading, Inc.,* 541 F.Supp. 58, 61 (S.D.N.Y.1981), *aff'd,* 678 F.2d 391 (2d Cir. 1982); *Apex Towing Co. v. Trading Corp.*

*of Pakistan,* No. 82 Civ. 8324(RWS), 1986 WL 10713, at *1 (S.D.N.Y. Sept.18, 1986). The traditional rationale underlying this rule is that it is necessary to "prevent re-examination of an issue by a nonjudicial officer potentially subject to outside communication and unilateral influence." *A/S Siljestad,* 541 F.Supp. at 61.

Nevertheless, it is also well settled that the doctrine does not bar submission of any issue to an arbitrator for subsequent determination if that issue has not been decided previously by the arbitrator. *See New York Hotel & Motel Trades Council v. Hotel St. George,* 988 F.Supp. 770, 781 (S.D.N.Y.1997). More importantly given the parties' present dispute, courts have routinely provided for the remand of arbitration awards for clarification or completion. *See Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985); *La Reunion Francaise v. Martin,* No. 93 Civ. 7165, 1995 WL 338291, at *1 (S.D.N.Y. May 31, 1995). As the Second Circuit noted in *Ottley v. Schwartzberg:*

> Indefinite, incomplete, or ambiguous awards are remanded "so that the court will know exactly what it is being asked to enforce." ... We have observed that "courts on occasion may remand awards to arbitrators to clarify the meaning or effect of an award, or to determine whether the arbitrator has in some way exceeded his powers."

819 F.2d at 376 (*quoting Americas Ins.,* 774 F.2d at 67; *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 894 (2d Cir.1985)). Remand of an ambiguous award is particularly appropriate, given that "a court should not attempt to enforce an award that is ambiguous or indefinite." *Americas Ins.,* 774 F.2d at 67.

To be sure, "when an award is remanded for clarification, the arbitrator is 'limited in his review to the specific matter remanded for clarification and may not rehear or redetermine those matters not in question.'" *La Union Francaise,* 1995 WL 33829, at *2; *see also Paperhandlers Union No. 1 v. U.S. Trucking Corp.,* 441

F.Supp. 469, 473 (S.D.N.Y.1977) ("Although Defendant cites many cases in both federal and state courts to indicate that the Arbitrator was free to reopen the entire hearing, we find these same cases fully supportive of the proposition that the arbitrator's powers on remand are limited to the clarification mandated by the court."). Similarly, where proceedings are remanded to allow for their completion, the arbitrator's inquiry is necessarily bounded by the issues requiring resolution.

*LLT I,* however, did not venture to limit the Panel's inquiry on remand simply to Paragraph 2.2.6 of the Agreement, or to LLT's claims for damages alone. Rather, the case was returned to the Panel with specific instruction that "the remand will encompass the claims of both parties," *LLT I,* 18 F.Supp.2d at 354, and the matters addressed in the Second Award were precisely those matters placed at issue by *LLT I.* The instant action thus does not present a situation where the arbitrator has ventured beyond the permissible limits of the remand order or addressed questions that were left undisturbed by the remanding court. *But see Paperhandlers,* 441 F.Supp. at 476 (finding that remand ordered by court was limited to clarification of specific term of collective bargaining agreement, and did not allow for arbitrator's reconsideration of dispute's merits or of status of employees). Nor does it present a situation in which proceedings were remanded in a manner that required the Panel to resolve issues not within the scope of the matters originally presented for arbitration. *But see Ottley,* 819 F.2d at 376 (finding that remand solely for purposes of monitoring compliance with arbitral award exceeded scope of district court's authority, as issues of compliance were not within scope of matters originally presented to arbitrator).

A review of the Second Award therefore reveals nothing that violates either the spirit or the letter of this Court's Opinion in *LLT I.* Furthermore, nothing in the Panel's Second Award indicates that the

Panel ventured to reconsider matters *functus officio*.

### III. *The Second Award Does Not Manifestly Disregard The Law*

■ LLT has taken the position, implicitly, that the Second Award expressly disregarded the law by imposing on LLT the burden of proving its claims, including the element of due performance of services. However, the Panel's conclusion is supported by New York law and does not, as LLT suggests, lack justification. *See* N.Y.C.P.L.R. § 3015(a) (where defendant denies performance of contractual conditions "specifically and with particularity," plaintiff "shall be required to prove on trial ... such performance ... as shall have been so specified"); *see also 1014 Fifth Ave. Realty Corp. v. Manhattan Realty Co.*, 67 N.Y.2d 718, 720, 499 N.Y.S.2d 936, 937, 490 N.E.2d 855, 856 (1986) ("It follows, under familiar principles of law, that plaintiff's failure to present evidentiary proof of faithful performance required denial of its motion [for summary judgment]"); *Allis–Chalmers Mfg. Co. v. Malan Constr. Corp.*, 30 N.Y.2d 225, 233, 331 N.Y.S.2d 636, 641, 282 N.E.2d 600, 603 (1972) ("plaintiff was certainly put on notice as to what he would have to establish at trial" by defendant's denial of specific allegations of plaintiff's performance); *CNY Mechanical Assocs., Inc. v. Fidelity & Guar. Ins. Co.*, 212 A.D.2d 989, 990, 624 N.Y.S.2d 700, 701 (4th Dep't 1995) (general denial by defendant "was sufficient to cast upon [plaintiff] the burden of proving at trial that it complied with the conditions of the Bond"); *Republic Corp. v. Procedyne Corp.*, 401 F.Supp. 1061, 1069 (S.D.N.Y. 1975) ("[S]ince plaintiff's performance was undeniably at issue, plaintiff had the burden of proving by a fair preponderance of the credible evidence that it had in fact performed its obligation under the contract"). There is no dispute here that MCI denied that LLT had performed its obligations under the Agreement, and the Panel's conclusion regarding burdens was therefore not issued in manifest disregard of the law.

LLT also submits that the law of "account stated" negated its burden to prove all of the elements of its claim for payment of unpaid invoices—including the element of "due performance" of services.

■ An "account stated" is "an agreement between the parties to an account based on prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other." *Chisholm–Ryder Co., Inc. v. Sommer & Sommer*, 70 A.D.2d 429, 431, 421 N.Y.S.2d 455, 458 (4th Dep't 1979); *see Kuczynski v. Miller*, No. 91 Civ. 6680(KMW), 1992 WL 309602, at *4 (S.D.N.Y. Oct.15, 1992). In other words, an account stated refers to an express or implied promise by a debtor to pay a stated sum of money which the parties have agreed is the amount due. *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 615 F.Supp. 426, 429 (S.D.N.Y. 1985). Where an account is rendered, he who receives it is " 'bound to examine the same or procure some one to examine it for him; if he admits it to be correct, it becomes a stated account and is binding on both parties ... unless fraud, mistake or other equitable considerations are shown.' " *Kuczynski*, 1992 WL 309602, at *3 (quoting *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 719 (S.D.N.Y.1986)); *see also Peterson v. IBJ Schroder Bank & Trust Co.*, 172 A.D.2d 165, 166–67, 567 N.Y.S.2d 704, 705 (1st Dep't 1991).

■ However, a party cannot be bound by an account stated unless it had, or was offered the ability to obtain, full knowledge of the true facts and circumstances relating to the actual amount due. It has been held, for example, that a defrauded party with no knowledge of the facts is not bound merely by the acceptance of an account stated. *See Westinghouse Elec. Corp. v. Lyons*, 125 N.Y.S.2d 420, 422 (N.Y.Sup.1953), *aff'd*, 1 A.D.2d 770, 149 N.Y.S.2d 216 (1st Dep't 1956); *see also Lewis & Merritt, L.L.P. v. Smith*, 170

Misc.2d 192, 193–94, 650 N.Y.S.2d 921, 922 (N.Y.Sup.1996) ("Mere silence and failure to object to an account cannot be construed as an assent to the correctness of the account without considering the factual circumstances attending the particular transactions to determine if an account stated may properly be implied.").

▮▮▮ It is well established that "fraud, misrepresentation or other equitable considerations" can "prevent recovery under a theory of account stated." *See Kuczynski*, 1992 WL 309602, at *4. While the Panel ultimately found that MCI had not met its burden of proving that LLT's billing practices constituted actionable fraud, it did find that LLT failed to submit proper invoices in accordance with the terms of the Agreement. Furthermore, the panel found that "LLT's improper [billing] practices were concealed from MCI and were not discovered by MCI until the summer of 1996" when MCI terminated the Agreement. Given these findings, the Panel did not manifestly disregard New York law.

*Preferred Health Care Ltd. v. Empire Blue Cross & Blue Shield*, No. 94 Civ. 9326, 1997 WL 160489 (S.D.N.Y. April 7, 1997), which has been invoked by LLT, is consistent with this conclusion. In *Preferred*, Empire Blue Cross and Blue Shield ("Empire") had alleged that Preferred Health Care ("PHC") overcharged for its services. PHC argued that the doctrine of "account stated" nevertheless entitled it to payment on its invoices because Empire did not timely object. The Court held that PHC failed, on the pleadings, to establish that it was entitled to payment of its invoices as an account stated:

> Empire's allegations that PHC was overcharging and setting forth expenses which PHC had not incurred, ... and which Empire had no means of discovering until Empire reviewed PHC's records, are sufficient allegations that "fraud, mistake, or other equitable considerations exist."

*Id.* at *5 (*quoting Kramer, Levin, Nessen, Kamin & Frankel*, 638 F.Supp. at 719).

## IV. *No Modification of the Second Award Is Warranted*

▮▮▮ A court's power to modify an arbitrator's award is "severely limited" under the Federal Arbitration Act ("FAA"). *Uco Terminals, Inc. v. Apex Oil Co.*, 583 F.Supp. 1213, 1217 (S.D.N.Y.1984), *aff'd*, 751 F.2d 371 (2d Cir.1984) Section 11(c) of the FAA allows a court to modify or correct an award where the award is "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Section 11(c) is thus limited only to matters of form not affecting the merits of the controversy and "does not license the district court to substitute its judgment for that of the arbitrators." *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980); *see Americas Ins. Co.*, 774 F.2d at 66–67.

▮▮▮ Section 11(a) of the Federal Arbitration Act allows the court to modify or correct an award where "there was an evident material miscalculation of figures." 9 U.S.C. § 11(a). The word "miscalculation," however, limits this ground to "inadvertence or an error caused by oversight." *Companhia De Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, No. 96 Civ. 6441(PKL), 1997 WL 16663, at *6 (S.D.N.Y. Jan.17, 1997).

LLT seeks a modification of the Second Award to grant LLT its unpaid invoices, attorneys fees and arbitration expenses—in essence, to have a court substitute its own judgment for that of the Panel, and to reevaluate the Panel's decision to "leave the parties where it found them financially." The proposed modification falls outside the Court's limited power to modify under Section 11 and is therefore rejected.

## Conclusion

The FAA provides that a court must "grant ... an order [confirming an arbitration award] unless the award is vacated, modified or corrected as prescribed in Sections 10 and 11 of this title." 9 U.S.C. § 9; *see Ottley*, 819 F.2d at 375; *LLT I*, 18 F.Supp.2d at 352. No valid basis has been established to vacate, modify or correct the

Second Award. The cross motion to confirm the Second Award is consequently granted, and the motion to vacate the Second Award denied with costs and disbursements to MCI.

Submit judgment on notice.

It is so ordered.