17-2496-cv
General Re Life Corp. v. Lincoln National Life Insurance

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2017

(Argued: May 16, 2018                    Decided: November 28, 2018)

Docket No. 17-2496-cv


_____


GENERAL RE LIFE CORPORATION,

*Plaintiff-Cross-Defendant-Appellant*,

v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

*Defendant-Cross-Claimant-Appellee*.


_____

Before:  POOLER, WESLEY, and CHIN, *Circuit Judges*.

General Re Life Insurance Corporation appeals from the March 31, 2017

ruling and order of the United States District Court for the District of Connecticut

(Bolden, *J*.) denying its petition to confirm an arbitration award and granting the

cross-petition of Lincoln National Life Insurance Company to affirm the award issued after the arbitral panel clarified the original award. General Re argues that the doctrine of functus officio—which limited the power of arbitrators to alter an award once the arbitrators have decided the issue—barred the arbitral panel here from clarifying how the parties were to calculate the amount of the award. award. Today we recognize an exception to functus officio: where an arbitration award is ambiguous, we hold that the arbitrators retain their authority to clarify that award.

Affirmed.

_____

HUGH S. BALSAM, Locke Lord LLP, Chicago, IL, *for Plaintiff-Cross-Defendant-Appellant*.

PAUL M. HUMMER, Saul Ewing Arnstein & Lehr LLP (John A. Basinger, Amy L. Piccola, *on the brief*), Philadelphia, PA, *for Defendant-Cross-Claimant-Appellee*.

POOLER, *Circuit Judge*:

General Re Life Insurance Corporation appeals from the March 31, 2017 ruling and order of the United States District Court for the District of Connecticut (Bolden, *J.*) denying its petition to confirm an arbitration award and granting the

cross-petition of Lincoln National Life Insurance Company to affirm the award issued after the arbitral panel clarified the original award. General Re argues that the doctrine of functus officio—which limited the power of arbitrators to alter an award once the arbitrators have decided the issue--barred the arbitral panel here from clarifying how the parties were to calculate the amount of the award. award. Today we recognize an exception to functus officio: where an arbitration award is ambiguous, we hold that the arbitrators retain their authority to clarify that award. We agree with the district court that the arbitrators correctly exercised their authority in handing down the clarification at issue here.

## BACKGROUND

General Re entered into an Automatic Self–Administered YRT Reinsurance Agreement ("Agreement") with Lincoln effective January 1, 2002. The Agreement allowed General Re to increase premiums, but only if the increase was founded on a "change in anticipated mortality." App'x at 61. If General Re exercised its right to raise the premiums, the Agreement allowed Lincoln to "recapture" its life insurance policies, rather than pay the increased premiums. App'x at 61. A recapture would mean that Lincoln would no longer have reinsurance after the recapture became effective.

3

The Agreement proved unprofitable for General Re, and in March 2014, General Re exercised its right to increase the reinsurance premiums effective April 1, 2014. On June 4, 2014, Lincoln elected to arbitrate the rate increase, as provided for in the Agreement. The parties agreed to maintain the status quo while the arbitration proceeded, with Lincoln paying General Re the pre-increase premium and General Re continuing to pay claims as they arose.

The arbitration panel held a multi-day hearing in June 2015, and then issued its award on July 1, 2015 ("Final Award"). The focus of the arbitration was whether there was a change in the anticipated mortality. Over a dissent, the majority found that there was such a change, and thus General Re was entitled to increase premiums. The Final Award stated that if Lincoln chose to exercise its right to recapture following the arbitration, the recapture would be effective retroactive to April 1, 2014. In the event of recapture, "[a]ll premium and claim transactions paid by one party to the other following the effective date of the recapture (*i.e.*, from April 1, 2014) shall be unwound." App'x at 230. The Final Award directed the parties to work together in calculating the amount of monies owed, and stipulated that "[a]ny disagreement over the calculations shall promptly be submitted to the [arbitral panel] for resolution." App'x at 230-231.

4

The arbitration panel retained "jurisdiction over this matter to the extent necessary to resolve any dispute over the calculation and payment of the amounts awarded herein." The panel specified that its jurisdiction would extend, in relevant part, until "(ii) the date on which Lincoln recaptures the business reinsured under the [Agreement] and all associated balances due are paid." *Id.*

Lincoln invoked its right to recapture on September 28, 2015. Lincoln and General Re took differing positions as to how to read the unwinding language in the Final Award. The dispute centered on how to handle premium payments made by Lincoln to General Re before the April 1, 2014 recapture date. Pursuant to the Agreement, Lincoln paid General Re in advance for a year of reinsurance when the underlying life insurance policy was renewed ("Unearned Premiums"). For example, in February 2014 Lincoln paid General Re for a year's worth of reinsurance for all policies renewing in February. General Re took the position that it was entitled to keep the premiums paid before April 1, 2014, but was not liable to pay any reinsured claim not paid by April 1, 2014. General Re reasoned that because the Final Award did not make any provision for the Unearned Premiums, that was the end of the discussion. Lincoln argued that General Re

5

was required to refund all Unearned Premiums and pay claims for deaths that occurred prior to April 1, 2014.

In a letter dated October 13, 2015, General Re told Lincoln that it would be sending Lincoln $5,484,106 and stated that this amount represented the net recapture balance, based on all premium and claim payments that had been made between the parties since April 1, 2014. Lincoln accepted the promised wire transfer without reservation on October 15, 2015. On October 26, 2015, Lincoln wrote to the arbitral panel, set forth the parties' dispute regarding the language of the Final Award and what that meant regarding the Unearned Premiums, and requested that the panel settle the issue. General Re objected to Lincoln's request, arguing it was beyond the authority of the arbitrators because it sought reconsideration of, and a fundamental change to, the recapture methodology unambiguously ordered in the Final Award. It argued that the statement "[a]ll premium and claim transactions paid by one party to the other following the effective date of the recapture (*i.e.*, from April 1, 20140 shall be unwound" unambiguously required only that General Re return to Lincoln premiums paid after April 1, 2014 and Lincoln return to General Re any claims paid after April 1, 2014, with both parties then walking away owing no further

6

obligation to each other. General Re noted that Lincoln's proposed methodology would result in a $17 million increase in what General Re owed. Conversely, General Re's position would allow it to keep all the Unearned Premiums without paying out any claims that arose during the relevant period.

On November 19, 2015, over a dissent, the arbitral panel issued a clarification ("Clarification"). The panel stated that the Final Award contained "ambiguities requiring clarification," and that both parties were reading the Final Award in a manner inconsistent with the language of the Agreement. App'x at 299. The Clarification stated that the Final Award "is not intended to and does not change the terms or language of the [Agreement]," and the Final Award "only deals with prospective unwinding of premiums and claim transactions beginning April 1, 2014." App'x at 300. The Clarification stated that when read in the context of the Agreement, the Final Award "entitle[d] Gen Re to retain the unearned premium it held as of the date of recapture," but also required General Re "to be liable for claims for which it retains premium." App'x at 300-01. The Clarification ordered that General Re retained all premiums paid before April 1, 2014, including the portions that represented Unearned Premiums, but that it

7

also remained liable for paying claims for all covered deaths, even if those deaths occurred on or after April 1, 2014.

General Re then petitioned the United States District Court for the District of Connecticut to confirm the original, unclarified Final Award, and Lincoln filed a cross-petition to confirm the Clarification. The district court denied General Re's petition to confirm the Final Award and granted Lincoln's petition to confirm the Clarification. *General Re*, 273 F. Supp. 3d at 326. This appeal followed.

**DISCUSSION**

We review a district court's decision to confirm or vacate an arbitration award as beyond the arbitrator's powers de novo as to legal issues and for clear error as to factual findings. *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). A district court may vacate an arbitration award if "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). A district court's authority to vacate an award "is strictly limited in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *T.Co. Metals*, 592 F.3d at 342 (internal quotation marks omitted). The party moving to vacate an award "bears the heavy burden of showing that the award falls within a very narrow set of

circumstances delineated by statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal quotation marks omitted).

General Re first argues that Lincoln waived its right to raise the issue of the Unearned Premiums by not raising the issue before the arbitral panel. We agree with the district court that Lincoln raised the issue sufficiently to preserve it. *See General Re Life Corp. v. Lincoln National Life Ins. Co.*, 273 F. Supp. 3d 307, 319 (D. Conn. 2017). The fact that the parties did not explore the methodology of recapture in any detail is hardly surprising given that the arbitration focused on the issue of whether General Re could impose a premium increase. Even if the arbitrators found for General Re on that issue, Lincoln could have chosen to pay the increased premiums. Recapture was not a foregone conclusion. Moreover, Lincoln is not challenging the language set forth in the Final Award requiring that the parties unwind all premium and claim transactions that occurred after April 1, 2014, nor is it challenging the amount General Re paid. What Lincoln is challenging is General Re's reading of the language to allow it to keep all Unearned Premiums without any of the accompanying liability to pay on deaths that occurred before April 1, 2014. Until it was aware that General Re would take the position that it did, Lincoln was not obligated to object.

9

General Re next argues that the arbitration panel exceeded its powers in issuing the Clarification because after issuing the Final Award, the arbitral panel was functus officio. "The functus officio doctrine dictates that, once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, their authority over those questions is ended, and the arbitrators have no further authority, absent agreement by the parties, to redetermine those issues." *T.Co. Metals*, 592 F.3d at 342 (internal quotation marks and brackets omitted). "The traditional rationale underlying this rule is that it is necessary to prevent re-examination of an issue by a nonjudicial officer potentially subject to outside communication and unilateral influence." *LLT Int'l Inc. v. MCI Telecomms. Corp.*, 69 F. Supp. 2d 510, 515 (S.D.N.Y. 1999) (internal quotation marks omitted).

We join the Third, Fifth, Sixth, Seventh, and Ninth Circuits in recognizing an exception to functus officio where an arbitral award "fails to address a contingency that later arises or when the award is susceptible to more than one interpretation." *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 554 (6th Cir. 2004) (internal quotation marks omitted); *Brown v. Witco Corp.*, 340 F.3d 209, 219 (5th Cir. 2003) ("An arbitrator can . . . clarify or construe an arbitration award that seems complete but proves

10

to be ambiguous in its scope and implementation."); *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995) (same); *Colonial Penn. Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) ("[W]hen the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate."); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 n.1 (9th Cir. 1982) (same).

Adopting this exception to functus officio furthers the well-settled rule in this Circuit that when asked to confirm an ambiguous award, the district court should instead remand to the arbitrators for clarification. *See Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 370 (2d Cir. 1999) ("[A] district court can remand an award to the arbitrator for clarification where an award is ambiguous."); *N.Y. Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 12 (2d Cir. 1988) ("When an arbitration award provides no clear instruction as to how a court asked to enforce the award should proceed, the court should remand to the arbitrator for guidance."). An arbitrator does not become functus officio when it issues a clarification of an ambiguous final award as long as three conditions are satisfied: (1) the final award is ambiguous; (2) the clarification merely clarifies the award rather than

11

substantively modifying it; and (3) the clarification comports with the parties' intent as set forth in the agreement that gave rise to arbitration. This narrowly drawn rule ensures that in those circumstances where an arbitral body issues an ambiguous award and must issue a clarification, it will do so in keeping with the twin objectives of arbitration: "settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

General Re argues that none of the relevant conditions are satisfied here. The Final Award provided in relevant part that:

> All premium and claim transactions paid by one party to the other following the effective date of the recapture (*i.e.*, from April 1, 2014) shall be unwound.

App'x at 230. General Re argues this language unambiguously provides that General Re return all monies for premiums paid by Lincoln after the April 1, 2014 date, and Lincoln return all monies paid for claims by General Re, and the relationship between the two ends.

We find no ground to disturb the arbitrators' conclusion that the Final Award was ambiguous as to the disposition of the Unearned Premiums. While perhaps not dispositive, the arbitrators' finding of ambiguity is due deference, as

12

is the norm with arbitral awards. *See Porzig v. Dresdner, Kleinwort, Benson, N. Am.* *LLC*, 497 F.3d 133, 138 (2d Cir. 2007) ("This Court has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process."). Here, each party offered a different interpretation of what the language at issue meant, and the arbitral panel said it meant something else altogether. Given that the language is susceptible to multiple meanings, it is ambiguous. *See, e.g.*, *York Research Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir. 1991) ("We are unable to determine whether the arbitrators intended the word 'expenses' to include attorneys' fees. For this reason, we remand that portion of the case to the district court with instructions to seek clarification from the arbitrators.").

General Re next argues that while titled "Clarification," the Clarification in fact fundamentally changes the remedy provided for in the Final Award, exceeding any authority for clarification. We disagree. The Clarification simply explains that the Final Award was intended to be read in the context of the Agreement. *General Re*, 273 F. Supp. 3d at 325. The Clarification stated that the Final Award was to be applied in a manner consistent with the Agreement, which remained unchanged by the Final Award. The arbitral panel explained

13

that while the Final Award allows General Re to retain Unearned Premiums held as of the date of recapture, it also makes General Re liable to pay out on those pre-April 1, 2014 claims for which it retains premiums. *Id.* This clarifies the Final Award. It does not rewrite it.

Finally, General Re argues that the arbitrator's reasoning is flawed, because it is inconsistent to find that the premiums Lincoln was paying before April 1, 2014 were too low while also finding that General Re must pay claims for policies secured by the insufficient premiums. It argues that allowing General Re to keep the Unearned Premiums without further obligation to pay out on claims "would help ameliorate these losses and the unfairness that [General] Re had already experienced." Appellant's Br. at 31. This argument is utterly unavailing. Lincoln did not breach the Agreement: it paid General Re the agreed-upon premiums. Those premiums were negotiated by both parties in good faith. The fact that the premiums proved inadequate may be the result of a poor business decision, but it no way requires Lincoln to make up General Re's losses.

**CONCLUSION**

We have examined the remainder of General Re's arguments and find them to be without merit. For the reasons given above, the judgment of the district court is affirmed.